# SUPREME COURT—MANDAMUS.

IN THE MATTER OF THE PETITION OF DANIEL FOSTER AND WILLIAM HENRY JOHNSON FOR A MANDAMUS TO THE COLLECTOR GENERAL OF CUSTOMS.

GOODS landed from a ship, reported to be unseaworthy (under a permit from the Custom House), for the purpose of allowing a survey to be made on the ship, and the said goods, as well as the ship, being subsequently sold at public auction, without payment of duties:

Held, that the property being once legally in the Kingdom, forfeiture cannot attach it; and the title of the property not affected in the hands of innocent purchasers:

Held—That the transaction may be regarded as an incomplete entry, to be perfected when the sale has fixed the valuation.

In such a case the Collector can require security for the duties, whatever they may be, as ascertained upon subsequent enumeration and valuation at public sale.

A peremptory mandamus issued to the Collector General of Customs, who had refused to receive the duties tendered him by the purchasers of the hull of a vessel, sold in bond at public auction, and which had been seized as for a violation of the revenue laws.

ALLEN, C. J.

This is a petition of Messrs. Foster & Johnson for a mandamus to the Collector General of Customs, ordering him, on receiving the duties on the hull of a vessel called the "Morea," to grant a permit to them for the same.

They allege that they purchased said hull at public auction, in bond, and on calling at the Custom House and offering to pay, and tendering the duties, the Collector General refused to receive the same and grant the necessary permit; but on the contrary, has caused the said vessel to be seized as for a violation of the revenue laws.

The District Attorney, as counsel for the Collector General, has filed an answer to the foregoing petition, in which he says that, on the 27th day of October last past, the ship "Morea" was reported at the Custom House as unseaworthy, and that a survey was necessary, whereupon a permit was granted in words following, viz:

" COLLECTOR GENERAL'S OFFICE,

HONOLULU, October 27, 1859.

" Permit Capt. Manchester, of the ship " Morea," to land from his vessel all her cargo, stores, etc., etc., in order to clear the ship for a survey. All spirits to be sent into the Custom House, and all articles landed to be returned on board, if the ship is repaired, or properly permitted, should she be condemned.

(Signed,)          " I. BARTLETT, Deputy Collector."

That, in pursuance of said permit, the ship " Morea " was stripped, and all but her hull landed on the wharf, and that on the 14th of November the hull of the ship, with her tackle and apparel, and stores, and whaling gear, were sold at auction by John F. Colburn, an auctioneer, and delivered to the purchasers, who have taken possession of the same, without being entered and the duties paid, in accordance with the laws of the Kingdom ; whereupon, on the 17th of December instant, the hull of the said ship " Morea " was seized, as liable to forfeiture, the purchasers having commenced breaking up the same, to be sold for consumption within the Kingdom.

The facts as detailed in the petition are admitted to be true.

The proper permit was granted for landing the goods from the ship for a survey, but not for consumption, and if the case closed here, it would clearly be a case of smuggling. For although a person has a right to a permit for landing goods from a vessel in distress, he has no right to put them into market without an entry and payment of the duties.

But in cases of this kind, for the convenience of the parties, and for the ascertainment of the value of the property sold, it has been the custom to delay the entry till after the sale, and to make out the entry from the account of sales—and I infer that the same course was taken in this case from the fact that the sale of the property was made by a licensed auctioneer; and it is admitted that it has been the custom of the Collector to allow auctioneers, in cases of this character, to sell, and account to him afterwards for the duty. It is admitted that the Collector General witnessed the sale from the Custom House, and that one of his officers was a purchaser of some articles at the sale. The Collector General further says that about a

fortnight after the sale he went to ask Mr. Colburn why he had not made his entry and paid the duties, and he said he had not sold all the things, that there was a sextant and a quadrant and some other things, and that when he had done so he would pay them.

For the convenience of the Custom House, as well as for the owners of the property, a sale of the property was permitted. The landing of the goods was therefore virtually approved as from the beginning, and if so, was there at this time any act of smuggling ? There had not been any fraudulent concealment of the property, or any act done in contravention of the avowed practice and usage of the office ; but on the contrary, a full compliance with all its requisitions. The property was then sold in conformity to law and usage, but the duties are not subsequently paid as they should have been, and now can this omission to fulfill the express or implied contract of payment of the duties taint the whole transaction as fraudulent *ab initio*, and subject the parties interested in said property to a forfeiture as for smuggling ?

It will not be contended that this can be the case, for the property being once legally in the Kingdom, forfeiture cannot attach it. It is very clear that at the time of the sale the Collector did not entertain the idea that smuggling was being done ; all was open and above board, and the whole transaction, I infer, met his approbation, till some days afterwards, when the duties were called for and payment not made.

The payment of the duties had become a matter of contract. But it is contended that it will occasion great inconvenience if the Collector is forced to the rigid rule of compelling entries at once in cases of this character ; this may be, but unless he has security for the payment of the duties, before the property is out of his possession, he runs the hazard of loss. Look at the consequences to the purchaser at a public sale, when the Collector acquiesces in its validity, and virtually agrees that the entry may be made and the duties paid afterwards, as by custom and usage appertains, but subsequently, on ascertaining the bankruptcy of the person on whom he relies, re-asserts a claim in the property, even to forfeiture. I hold that the property once legitimately went into the market,

that whatever of dishonor or of negligence the parties may have been guilty of in the non-payment of duties according to the understanding, does not taint the transaction itself, so as to affect the title of the property in the hands of innocent purchasers.

This case is somewhat different from that of a regular importation, when all the pre-requisites to landing may be performed; for, in the first instance, the landing in cases like this must take place without them, for here the goods were landed for a survey and not for sale, and a permit given for that purpose. So, goods wrecked on our shores may be taken away, or may enter into the consumption of the country; and if they do, duties are to be paid; it is not at all strange that a delay for an enumeration and valuation by public sale should be made with the approbation of the Collector. It only requires on his part security for the duties, whatever they may be.

It is a sound legal principle, that a forfeiture can only be applied to those cases in which the means that are prescribed for the prevention of a forfeiture may be employed. (Priest *vs.* Ware, 2 Curtis, Decisions of the Supreme Court, U. S.)

Can any one doubt that the entry would have been made and duties paid had it not been by the approbation of the Collector that this postponement was made to complete a perfect enumeration and to fix the valuation? The admitted usage in like cases, the acquiescence of the Collector in this particular case, as evinced by his witnessing the sale, which took place on the 14th of November; his call on the auctioneer for duties some two weeks afterwards; his delay of the seizure of the vessel till December 17th; and his virtual approval of the sale, by suffering the purchasers to remove all the property which they had purchased, consisting of boats, etc., etc., proves this not to be an exceptional case.

It is admitted that the business was done in the most public manner, and there is no pretense of any concealment in the case.

I do not intend to be understood that a custom has arisen obligatory on the Collector to bind him in cases of this character without an approval of the same course, as in this particular case; but where this is given, the non-fulfillment of the

terms by the auctioneer does not work a forfeiture of the property in the hands of an innocent purchaser. It may be regarded as an incomplete entry, to be perfected when the sale has fixed the valuation, and to do this, a *bona fide* sale must be made, and if *bona fide*, the right of the petitioners to complete the entry and perfect the title is clear.

The petitioners present a still stronger case, for the hull purchased by them was sold in bond, and they have tendered the duties and are now ready to pay them. It would certainly be a serious case for purchasers under the circumstances in which this sale was made, to incur a forfeiture of their entire purchase, because the duties have not been paid on other articles, sold at the same time, belonging to the same owners. Practically it would be as oppressive as the seizure of goods in the hands of innocent purchasers, when the importer had given security for the duties, which subsequently proved worthless.

I exceedingly regret that the Collector, after extending such kindness and courtesy in the administration of his office, should be subjected to the hazards of a loss, still it is less to be deprecated than the forfeiture of the goods of innocent purchasers at a public sale, when occasioned by the liberal administration of his office. Taking all the circumstances into consideration I am of opinion that the petitioners have not incurred a forfeiture, and are entitled to the possession of the property on the payment of the duties.

The Court, therefore, order a peremptory mandamus, directed to the Collector General of Customs, to be issued.

Mr. Harris, for the petitioners.

Mr. A. B. Bates, for the Collector of Customs.