THE REPUBLIC OF HAWAII *ex rel.* JAMES B. CASTLE, COLLECTOR-GENERAL, *v.* E. HOFFSCHLAEGER & COMPANY and LOVEJOY & COMPANY.

SUBMISSION.

SUBMITTED OCTOBER 3, 1896.        DECIDED OCTOBER 29, 1896.

JUDD, C.J., FREAR AND WHITING, JJ.

Certain wines were entered at the Custom House and duties paid thereon at the rate of 15 cents per gallon, according to the statutes levying duties on wines of alcoholic strength under 21 deg., and the wines were withdrawn, a sample however being retained, which proved on testing to be above 21 deg. alcoholic strength, which required duties to be paid at the larger rate of $2 per gallon:

Held, that there was a legal importation, entry and withdrawal and that, the wines once withdrawn, could not be returned to the custody of the Customs Department for reshipment to California in order to obtain the drawback of duties.

Held, that the wines were legally in the Republic, and no forfeiture could attach, nor could the wines be returned for the purpose of causing the Customs officers to sell them as unclaimed goods.

Held, that the defendants had paid short duties, and were liable to the Government for the larger rate of duties, which became a debt due the Government on the withdrawal of the goods.

OPINION OF THE COURT BY WHITING, J.

Submission under the statute upon an agreed statement of facts, as follows:

"The firm of E. Hoffschlaeger & Company received a shipment of California wine on February 3rd, 1896, per bark S. G. Wilder, and entered the same at the Custom-house in Honolulu.

The number of gallons so received was 438, of the value of $142.35. The firm of Lovejoy & Company received in like manner a shipment of California wine on February 7th, 1896, per bark Planter, and entered the same at the Custom-house of Honolulu. The number of gallons of the latter shipment was 303, of the value of $116.22.

The regular duties upon said wines were paid by the defendants. According to usual custom, the authorities of the Custom-house, for the purpose of facilitating traffic, allowed the packages to be delivered to the respective defendants, without making an official test of the alcoholic strength of the wines, which test if brought to the notice of the consignees as exceeding the lawful strength, would have left them free to abandon the merchandise or to place them in a bonded warehouse for the purpose of reshipment. This course of testing and notification (before withdrawal) has been pursued after this controversy has arisen, and the merchandise is delivered only after the test is made.

It was afterwards ascertained that the wines so delivered contained a higher percentage of alcohol than was allowable under the law, Chapter 25 of the Session Laws of 1892 (p. 33), which provides that wines containing an alcoholic strength (over 21° and) below thirty per cent. should pay a duty of two dollars per gallon, and those containing an alcoholic strength of less than twenty-one per cent. should pay a duty of fifteen cents per gallon.

The wines in question exceeded in alcoholic strength twenty-one per cent. in rates at from seven to eight per cent. It appears that these wines, which were made and fortified for the Spanish American market, were sent to the Hawaiian Islands by mistake of the consignors, and it is not claimed that the defendants intended or attempted by their respective entries to perpetrate any fraud or deceit by undervaluation or otherwise.

When the fact of these wines containing the alcoholic strength exceeding twenty-one per cent. was ascertained, the defendants requested to be allowed to return the wines in question to the possession of the Custom-house authorities, to be subjected to

such disposition which might be permitted under the law. This request was refused by the Collector, who insists that the duty of two dollars per gallon should be paid on them. The actual value of the wines does not exceed the invoice cost adding the duties paid upon them.

The amount claimed by the Collector on the shipment of E. Hoffschlaeger & Company is the sum of $810 in addition to the fifteen cents paid; that claimed on the shipment of Lovejoy & Company is the sum of $560 additionally.

The fact of the excess of the alcoholic strength of seven or eight per cent. does not enhance the value of the wines in the local market, and it can not be sold at a higher price than the California wines below the strength of twenty-one per cent."

The defendants make the following points:

1. "That upon being informed of the fact that the wine was over 21°, the defendants requested leave to send it back to the Customs stores to await an opportunity to reship it to California, which was denied by the Collector-General, who insisted that defendants must keep the wine and pay the duty of $2 per gallon. The Collector-General held that the wine could not be reshipped and the drawback allowed, because the wine had not remained in the Customs stores as required by Section 563 of the Civil Code."

Section 518 of the Civil Code provides that all customs duties shall be paid in cash, with a provision however that a reasonable credit may be allowed not exceeding 90 days, upon a good and sufficient bond being given to the Collector-General.

The duties were paid at the rate of fifteen cents per gallon, and the wine was removed to defendants' premises, leaving a sample at the Custom-house for testing. The importation, entry and withdrawal from the Custom-house were thus complete.

Sec. 563, Civil Code (amended, Laws of 1860, Comp. Laws, p. 160) provides that "All goods, wares and merchandise of every kind and description whatsoever, imported into this Kingdom (Republic) shall upon exportation be entitled to a drawback

equal to all duties payable upon such goods; provided, that no goods or liquors shall be entitled to drawback unless the same are exported in the original packages, and shall have been stored and remained in the public stores under the charge of the Collector of Customs."

Under this section, the defendants could not return the wine, reship it to California and receive the drawback. It is a misfortune to the defendants, but they are without remedy.

Defendants claim that it was a mutual mistake on their part and that of the Collector-General, and that the Collector-General waived the provisions of the statute.

But Sec. 519, Civil Code, provides that: "Duties on goods shall be paid or secured to be paid before a permit shall be granted for landing or transhipping them." The Collector-General can not waive any provisions of the law so as to bind the Government. He, like all public officers, cannot bind the Government by any acts beyond or contrary to the authority given to him by the laws. The giving up of goods without full payment of duties is an act not only not authorized, but forbidden, by statute. And likewise he could not receive them back in face of Sec. 563, Civil Code (amended).

*Minturn v. U. S.*, 106 U. S. 444.

2. That if defendants are not entitled to return the wine for reshipment, then they should have been allowed to return the wine to the Custom-house and abandon it as unclaimed goods.

This position cannot be maintained. There was no fraud on the part of the defendants, for if there had been, they might have been liable not only for the forfeiture of the goods and the penalties of smuggling, but also to the payment of the full duties as well. The wine was legally in the Republic, and forfeiture could not attach it. It is like an incomplete entry, and on the test being made the amount of duties is determined and they become a debt due the Hawaiian Government.

*In re Petition of Foster et al. v. Collector-General of Customs*, 2 Haw. 197.

It is claimed by defendant that there was no intent to import this kind of wine, but one of a degree under 21°, and therefore there was no importation by them. But this is not sound. The defendants ordered a lighter wine, and the mere fact that their consignors shipped one of a different quality, of greater alcoholic strength, cannot relieve defendants from being importers after entry made, short duties paid and withdrawal of the wine.

The defendants are in the position of withdrawing goods from the Custom-house, having paid thereon short duties, and by such withdrawal they assume to pay the actual duties due on them.

Duties become a debt due to the Hawaiian Government upon importation of the goods. The debt accrues by statute and is not dependent upon any undertaking by the importer. The goods, having been imported, had been left in the custody of the Custom-house, which held them as security for the payment of the duties due upon them. Parting with this security, it is to be assumed that the person withdrawing them assumes to pay what is due on them.

> *Cleghorn, Collector-General of Customs v. Luce,* 7 Haw. 314.

Duties are a personal debt or charge upon the importer, and the right to them is not limited to the lien on the goods or the bond given for their payment. If the goods are liable to duty, such duty can be collected by action against the importer, notwithstanding the goods were delivered to the importer upon the assumption that they were entitled to entry free. They are due, although the goods have been smuggled, or through accident, mistake or fraud no duties or short duties have been paid, and the importer is not discharged from his debt by the delivery of the goods to him without payment. A bond taken to secure the duties is not an extinguishment of the debt, but merely collateral security for its payment.

> *U. S. v. Cobb,* 11 Fed. Rep. 76.

Duties are a personal debt independent of any lien on goods and of any bond given for duties, and the right to the

duties accrues when goods have arrived at the proper port of entry.

*Meredith v. U. S.*, 13 Pet. 486.

The defendants have no remedy in law to relieve them from what is an apparent hardship arising through no negligence on their part, but resulting from the mistake of their consignors and a practice of the customs officers in permitting withdrawals before full test is made; but such practice appears to be for the benefit of the importer to facilitate commercial transactions and traffic.

The relief sought for cannot be granted by the Court in this case, however great the equities.

Let judgment be entered for the plaintiff for $810 against Hoffschlaeger & Company, and for $560 against Lovejoy & Company, in accordance with the submission.

*Attorney-General W. O. Smith* and *Deputy Attorney-General E. P. Dole*, for plaintiff.

*A. G. M. Robertson*, for defendants.