NUNN, Collector, v. WILLIAM GERST BREWING CO.

(Circuit Court of Appeals, Sixth Circuit. February 12, 1900.)

No. 744.

1. INTERNAL REVENUE—AMENDMENT OF STATUTE—TIME OF TAKING EFFECT.

The tariff act of 1897, which, among other things, amended Rev. St. § 3341, did not take effect until it was signed by the president, at 4 minutes past 4 o'clock p. m., Washington time, on July 24; and, where material in a case arising under such section, the exact time of the taking effect of the amendment may be shown.

2. SAME—DISCOUNT ON BEER STAMPS—EFFECT OF AMENDMENT OF STATUTE.

Under the provision of Rev. St. § 3341, before its amendment by the Dingley tariff act of 1897, allowing a discount of 7½ per cent. on beer stamps purchased by a brewer "and by him used in his business," as construed by the treasury department during the 30 years it remained in force, the purchaser of such stamps was entitled to the discount at the time of the purchase, where the stamps were afterwards used in his business; and where stamps were purchased on July 24, 1897, but before the signing by the president of the act containing the amendment, the purchaser is entitled to the discount, although the stamps, in due course of business, were used on later dates.

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

This was a suit brought by William Gerst, the defendant in error, trading under the firm name and style of the William Gerst Brewing Company, to recover of D. A. Nunn, United States collector of internal revenue for the Fifth collection district of Tennessee, the sum of $810.75. This sum was paid under protest to Collector Nunn, by reason of an alleged erroneous and illegal assessment made by the commissioner of internal revenue. The cause was begun in the chancery court of Davidson county, Tenn., and was removed to the court below on the petition of the defendant, under section 643 of the Revised Statutes of the United States. There is no dispute as to the facts, and they are correctly set forth in the declaration which the plaintiff was required to file upon the law side of the court below after removal. On July 23, 1897, about noon, the manager of the Gerst Brewing Company telephoned the office of the collector of internal revenue an order for beer stamps, the total face value of which amounted to $10,810. The communication was had by the manager with a deputy collector in charge of beer stamps, and he replied

that they could not be delivered that day, but would be counted out and would be ready for delivery the next morning. The next morning, July 24, 1897, about 9 o'clock, the manager of the brewing company called and was given the stamps, paying therefor $9,999.25, in accordance with the provisions of section 3341 of the United States Revised Statutes, and was allowed a discount of 7½ per cent. on the face value of the stamps, of $810.75. At the time the order was given, and on the 24th of July, 1897, when the stamps were delivered, the brewing company had a sufficient quantity of beer on hand, ready for market, to use the stamps bought. On July 24, 1897, at 4 minutes past 4 o'clock in the afternoon, the president signed the Dingley tariff act, which repealed the provision of section 3341 of the Revised Statutes providing that "the commissioner of internal revenue shall allow upon all sales of such [beer] stamps to any brewer, and by him used in his business, a deduction of seven and a half per centum." On the 30th of July, 1897, the commissioner of internal revenue instructed the collector to collect from all brewers in his district the discount of 7½ per cent. which was allowed by him on beer stamps delivered by him on or after July 24, 1897, without regard to date of order of such stamps. The Gerst Brewing Company was accordingly assessed $810.75, the amount of the discount allowed on the morning of July 24, 1897, already referred to. The assessment was paid under protest on March 21, 1898. An application was made to have the same refunded, but the application was rejected. Therefore on June 22, 1898, this suit was begun as already stated. The case was tried without the intervention of a jury, and judgment was given against the collector for the amount of the assessment, with interest from the date when it was paid.

Abram M. Tillman, U. S. Atty., for plaintiff in error.

John Ruhm & Son, for defendant in error.

Before TAFT, LURTON, and DAY, Circuit Judges.

TAFT, Circuit Judge (after stating the facts as above). It is urged on behalf of the United States that the judgment of the court below was erroneous for two reasons: First, it is said that the Dingley act, though not signed until 4 o'clock on July 24, 1897, became law and operative by relation from the first moment of the day of its approval (that is, from and after midnight of July 23, 1897), and that therefore when the money was paid for the stamps the provision of section 3341, allowing the 7½ per cent. discount, was not the law; second, it is contended that under section 3341, Rev. St., as it was before amended, no right to a discount arose until the stamps had been used in the business of the brewer. It is argued that by the purchase of stamps the brewer does not pay the tax, that the tax is paid only when the stamps are affixed to the barrel for the purpose of putting the product on the market, and that before the stamps purchased in this instance were so used section 3341 had been repealed.

In the case of Carriage Co. v. Stengel, 37 C. C. A. 210, 95 Fed. 637, we had occasion to consider the question of the right to introduce proof to show the exact time when the bill passing congress takes effect by virtue of the signature of the president. We there found and stated the law to be that in the absence of proof there is a presumption that the act was signed on the first minute of the day when it took effect, but that it was competent to show by proof the exact time when the law was approved by the president, and that when this was made to appear the law could only be given effect from that time. In addition to the cases cited to sustain this view

in the Stengel Case, we may refer to a consideration of the question in respect of this very act in U. S. v. Iselin (C. C.) 87 Fed. 194; U. S. v. Stoddard (C. C.) 89 Fed. 699; s. c., on appeal, 34 C. C. A. 175, 91 Fed. 1005. The case of U. S. v. Iselin (C. C.) 87 Fed. 194, contains a very full discussion of the subject by the board of general appraisers. It necessarily follows that the law was not in force at the time the stamps were bought and the discount was allowed.

The averment of the declaration as to the time when the stamps purchased on the morning of July 24th were used is quite indefinite. It is that "some of the stamps (the exact amount will be shown) were actually used and affixed to packages and effaced, as required by law, during the 24th of July," and the evidence upon this point is that they actually did use on the 24th of July some of the stamps, and used the remainder afterwards in a comparatively short time. The question, then, is whether a brewer is entitled to a discount on his stamps before they are used, if they are used in the business. Section 3341 of the United States Revised Statutes is as follows:

"The commissioner of internal revenue shall cause to be prepared, for the payment of such tax, suitable stamps, denoting the amount of tax required to be paid on the hogshead, barrel, and halves, thirds, quarters, sixths and eighths of a barrel of such fermented liquors (and shall also cause to be prepared suitable permits for the purpose hereinafter mentioned), and shall furnish the same to the collectors of internal revenue, who shall each be required to keep on hand at all times a sufficient supply of permits, and a supply of stamps equal in amount to two months' sale thereof, if there be any brewery or brewery warehouse in his district; and such stamps shall be sold, and permits granted and delivered by such collectors, only to the brewers of their district respectively. Such collectors shall keep an account of the number of permits delivered and of the number and value of the stamps sold by them to each brewer; and the commissioner of internal revenue shall allow upon all sales of such stamps to any brewer, and by him used in his business a deduction of seven and a half per centum. And the amount paid into the treasury by any collector on account of the sale of such stamps to brewers shall be included in estimating the commissions of such collector."

Section 3339 fixes the tax on fermented liquors. The last clause of the section provides:

"The said tax shall be paid by the owner, agent or superintendent of the brewery or premises in which such fermented liquors are made, and in the manner and at the time hereinafter specified; that every brewer shall obtain from the collector of the district in which his brewery or brewery warehouse is situated, and not otherwise, unless such collector shall fail to furnish the same upon application to him, the proper stamps and shall affix upon the spigot-hole or tap (of which there shall be but one) of every hogshead, etc., in which any fermented liquor is contained, when sold or removed from such brewery or warehouse (except in case of removal under permit as hereinafter provided) a stamp denoting the amount of the tax required upon such fermented liquor, in such a way that the said stamp will be destroyed," etc.

The brewer pays the tax by buying the stamps. He secures the benefit of such payment, to wit, the removal and sale of beer from his brewery or warehouse, by fixing the stamps to the package in which the beer is contained. It appears from an examination of the regulations adopted by the commissioner of internal revenue and the secretary of the treasury that the practical construction of section 3341, since its passage, July 13, 1866 (14 Stat. 165), and its amendment, June 6, 1872 (17 Stat. 246), is that the discount of 7½

per centum is to be allowed at the time the stamps are sold. The form of application provided by the regulations of the revenue department, upon which stamps are to issue, shows a calculation of the total face value of the stamps, followed by a deduction of $7\frac{1}{2}$ per cent., and a footing of the net total of the value of the stamps. The language of the section will easily bear two constructions. The phrase "by him used in his business" may be construed to be a postponement of the time for allowing a discount until the stamps have been used in the business, or it may be held to mean that the discount is to be allowed on all sales of stamps "by him to be used in his business," or in other words "stamps purchased for the purpose of being used in the business." The practical construction put upon the section by the department sustains the latter interpretation. The allowance has always been made upon the sales at the time the sales are made and the stamps have been delivered to the brewers upon their formal application therefor, prepared in accordance with the rules of the department, for the face value of the stamps less the discount. The effect of such 30 years' construction of the statutes by those who are charged with its enforcement is controlling. The cases are so numerous on this point, and the principle is so well settled, that citations are hardly necessary. U. S. v. Union Pac. R. Co., 148 U. S. 562, 13 Sup. Ct. 724, 37 L. Ed. 560; U. S. v. Alabama G. S. R. Co., 142 U. S. 615, 12 Sup. Ct. 306, 35 L. Ed. 1134; Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363; Robertson v. Downing, 127 U. S. 607, 8 Sup. Ct. 1328, 36 L. Ed. 269; Heath v. Wallace, 138 U. S. 573, 11 Sup. Ct. 380, 34 L. Ed. 1063; U. S. v. Johnston, 124 U. S. 236, 8 Sup. Ct. 446, 31 L. Ed. 389; U. S. v. Hill, 120 U. S. 169, 7 Sup. Ct. 510, 30 L. Ed. 627. The executive construction of an act is not conclusive, but where there is doubt about the statute it will be followed unless there are cogent reasons to the contrary. We find none here. The stamps which were purchased on the morning of July 24, 1897, and upon which the discount was then allowed, were used in due course of business. The right to the discount accrued at the time of the purchase of the stamps. Had the stamps not been used in the business of the brewery, other questions might have arisen. As it is, the action of the court below in giving judgment to the plaintiff was clearly right, and the judgment is affirmed.