(C. D. 1079)

QUAKER OATS CO. *v.* UNITED STATES

▮

United States Customs Court, Third Division

(Decided January 8, 1948)

Barnes, Richardson & Colburn (Joseph Schwartz of counsel) for the plaintiff.
Paul P. Rao, Assistant Attorney General (Howard L. Harawitz, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: This is a protest arising at the port of Chicago against the collector's assessment of duty at the rate of 8 cents per bushel under paragraph 726 of the Tariff Act of 1930, as amended by the Trade Agreement with Canada, T. D. 49752, on oats shipped from Canada. It is claimed that the merchandise is entitled to free entry under Public Law 272 (58 Stat. 131). The collector's report on protest states that "the merchandise was not imported during the period during which free entry could be accorded under the provisions of Public Law 211 as amended by Public Law 272."

The pertinent provisions of Public Law 272 (58 Stat. 131), which amended Public Law 211 (57 Stat. 607), provide:

That (a) notwithstanding the provisions of the Tariff Act of 1930, the following, when imported into the United States from foreign countries, and when entered, or withdrawn from warehouse, for consumption, at any time after December 22, 1943, and before June 20, 1944, shall be exempt from duty:

\* \* \* \* \* \* \*

(1) Wheat, oats, \* \* \* any of the foregoing if to be used as, or as a constituent part of, feed for livestock and poultry.

\* \* \* \* \* \* \*

(3) Oats to be used for purposes of human consumption, if the entry or withdrawal is after the date this paragraph takes effect.

This case was submitted on a stipulation of counsel which reads in parts as follows:

It is hereby stipulated and agreed as follows:

1. The merchandise which is the subject of this protest consisted of 145,985 bushels of oats, of 32 lbs. each, imported by the plaintiff into the United States from Canada via the Great Lakes on the steamship "Starbuck".

2. The stemship [sic] "Starbuck" left Fort William, Ontario, Canada on June 17, 1944 destined for Chicago, Illinois with the said oats on board and with no other cargo. The "Starbuck" entered into the waters of the United States at or before 9:44 P. M. on June 18, 1944 with intention to unlade at Chicago. The "Starbuck" arrived within the limits of the port of Chicago on June 20, 1944 at or about 7:30 A. M. of that day, and docked at Chicago at or about 8:15 A. M. of that day. A photostatic copy of the log of the "Starbuck" is attached hereto and may be received in evidence as plaintiff's exhibit "A".

3. An "unlading permit" was filed with the Collector of Customs, Chicago, on June 19, 1944 on Customs Form 3171. A copy of said unlading permit is attached hereto and may be received in evidence as plaintiff's exhibit "B".

4. At 2:00 P. M. on June 19, 1944 plaintiff tendered to the Collector of Customs, Chicago, an entry covering the said oats, claiming free entry under Public Law 211, approved December 22, 1943, and Public Law 272 approved March 29, 1944. The Collector refused to accept said entry, upon the ground that the "Starbuck" was not within the limits of the port of Chicago when the entry was tendered.

5. On June 20, 1944 plaintiff filed Consumption Entry 5255 covering the said oats. The said entry 5255 is included among the papers transmitted by the Collector of Customs to the United States Customs Court in the above entitled action.

6. The said oats were used as feed for livestock or poultry, or as a constituent part thereof, or for purposes of human consumption. Plaintiff filed a "preliminary affidavit" at the time of entry; and filed "proof of use" affidavits on July 12, 1945. Except for the question of whether entry was made within the period prescribed in Public Law 211, as amended by Public Law 272, approved March 29, 1944, plaintiff complied with the regulations prescribed by the Secretary of the Treasury, as shown by the attached letter, dated December 30, 1946 from the Treasury Department to Barnes, Richardson & Colburn, which may be received in evidence as plaintiff's exhibit "C".

\*       \*       \*       \*       \*       \*       \*

Plaintiff's claim is based on the assumption that the merchandise was imported prior to the expiration of Public Law 272 (although entered thereafter). It is then claimed that the statute should be construed to include grains and grain products imported *or* entered prior to June 20, 1944. In *C. J. Tower & Sons* v. *United States*, 14 Cust. Ct. 94, C. D. 919, appeal dismissed 33 C. C. P. A. 190, we held that Public Law 211 (of which Public Law 272 is an extension) was a remedial statute and should be liberally construed. There we held that Congress intended the term "derivatives" to include all types of feed grains and their products; here we are asked to substitute "or" for "and." It has been held that "and" may be construed as "or," but only where an ambiguity exists or where any other construction would bring about a result not in harmony with the obvious purpose of Congress. *Doughten Seed Co.* v. *United States*, 24 C. C. P. A. 258, T. D. 48686; *Pacific Vegetable Oil Co.* v. *United States*, 32 C. C. P. A. 68, C. A. D. 287. In the instant case, there is no ambiguity. The statute provides that one of the conditions attached to the privilege of free entry be that the merchandise be imported and entered prior to the expiration date.

In *William J. Oberle, Inc.* v. *United States*, 4 Cust. Ct. 319, C. D. 351, it was claimed that the merchandise was entitled to a reduced rate of duty under a paragraph of the Cuban Trade Agreement, T. D. 47232, which provided:

774. Okra in its natural state, when imported and entered for consumption during the period from December 1 to the following May 31, inclusive, in any years.

The merchandise had been imported on November 29, 1937, and entered on December 1, 1937. The court said:

It therefore clearly appears that the instant merchandise was not "imported" during the period mentioned in the trade agreement. The fact that it was entered during that period is not sufficient to satisfy the terms of the agreement, i. e., "imported and entered."

Moreover, we do not think the merchandise herein was "imported" prior to the expiration of the statute. As appears from the stipulation of facts, the vessel carrying it entered the waters of the United States on June 18, 1944, but did not arrive within the limits of the port of Chicago until June 20 (subsequent to the expiration of the statute). It is necessary to determine, therefore, which is the date of importation.

A similar issue was raised as long ago as 1809 in *United States v. Vowell and M'Clean*, 5 Cranch 368. In that case a vessel carrying a cargo of salt arrived within the collection district of Alexandria on December 23, 1807, but did not arrive at the port of Alexandria until January 1, 1808. By the act of March 3, 1807, it was provided "that from and after the 31st day of December next, so much of any act as lays a duty upon imported salt, be and the same is hereby repealed; and from and after the day last aforesaid, salt shall be imported into the United States free of duty." The court held that the merchandise was entitled to free entry, stating:

* * * The duties did not accrue in the fiscal sense of the term, until the vessel arrived at the port of entry. * * * It is understood that in case of an increase of duty, the United States have always demanded and received the additional duty if the goods have not arrived at the *port of entry* before the time fixed for the commencement of such additional duty, although the vessel may have arrived within the collection district before that time. The same rule of construction is to be observed when there is a diminution of duty. [Italics quoted.]

This rule was set forth again in *Arnold v. United States*, 9 Cranch 104, in an action brought on a bond given for the payment of duties. The vessel had arrived within the limits of the United States on June 30, 1812, and within the collection district of Providence on July 1. Entry was made on July 2. An enactment of July 1, 1812, provided that an additional duty of 100 per centum should be levied upon all goods "which shall, from and after the passing of this act, be imported into the United States from any foreign port or place." It was held that the additional duties had accrued on this merchandise. The court stated:

* * * To constitute an importation so as to attach the right to duties, it is necessary not only that there should be an arrival within the limits of the United States, and of a collection district but also within the limits of some port of entry.

In *Meredith and Ellicott v. United States*, 13 Peters 486, the rule was stated as follows:

The question has also been asked, at what time the right of the government to the duties accrues in the fiscal sense of the terms. The answer is, at the time

when the goods have arrived at the proper port of entry. This is the established rule adopted by the government in all cases where there has been a new act passed, increasing or diminishing the duties to be paid on goods imported after a specified period.

That rule has been followed in later cases. In *United States* v. *Edwin S. Hartwell Lumber Co.*, 142 Fed. 432, cert. denied, 201 U. S. 644, a duty on lumber was imposed by a statute which went into effect on July 24, 1897, at 3:06 p. m. It provided:

> That on and after the day when this act shall go into effect all goods, wares and merchandise previously imported, for which no entry has been made, * * * shall be subjected to the duties·imposed by this act and to no other duty * * *.

Prior to 3:06 p. m. of July 24, the barges on which the merchandise was laden were in American waters and within the collection district of Chicago, but they had not arrived within the limits of the port. The consignees tendered entry of the lumber on July 23 and during the forenoon of July 24. It was held that these tenders were ineffective. The court stated that after an importation of goods was complete, a tender of entry was equal to an entry, but that the whole scheme of the tariff laws and the general statutes contemplated that "importation" should precede "entry"; that the right of the Government to duties did not accrue while the goods were at sea, even if the vessel had reached American waters and a collection district; and that importation could not be complete until the vessel had reached the end of her voyage. At that moment, it was the duty of the Government to accept the entry, because the importer was then under an obligation to pay the duties, but the collector was not bound to accept entry while the vessels were still under way.

The same rule was applied in connection with goods imported for experimental purposes under section 308 of the Tariff Act of 1922 which relieved such articles from duty if exported "within six months from the date of importation." *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appls. 273, T. D. 41884. It was held that goods which were not exported within six months of the date upon which they had arrived within the limits of the port of New York were subject to duty. The court stated:

> The common ordinary meaning of the word "import" is to bring in. Imported merchandise is merchandise that has been brought within the limits of a port of entry from a foreign country with intention to unlade, and the word "importation" as used in tariff statutes, unless otherwise limited, means merchandise to which that condition or status has attached.

The same rule has been followed in more recent cases. *O. E. Barrant* v. *United States*, 73 Treas. Dec. 128, T. D. 49363; *Tassini & Salisch-Parver, Inc.* v. *United States*, 6 Cust. Ct. 571, Abstract 45512; *Mata* v. *United States*, 19 F. 2d 484; *The Przemysl*, 23 F. 2d 336.

There is nothing in Public Law 211 or Public Law 272 to indicate that Congress intended to change the long-established rule that

goods are not "imported" within the meaning of tariff acts until they have arrived within the limits of a port of entry. The cases cited by plaintiff are not to the contrary. In *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 406, T. D. 42052, it was held that "importation" did not mean "entry," and in *Cunard Steamship Company* v. *Mellon*, 262 U. S. 100, a special situation created by the National Prohibition Act was involved.

We hold, therefore, that the merchandise herein is not entitled to free entry under Public Law 272 (58 Stat. 131) since it was not imported and entered prior to June 20, 1944. The protest is overruled and judgment will be rendered in favor of defendant.