JONATHAN MEREDITH AND THOMAS ELLICOTT, PLAINTIFFS IN
ERROR, *vs.* THE UNITED STATES, DEFENDANTS IN ERROR.

An action was instituted by the United States, to recover from the assignees of S. Smith
and Buchanan, insolvent merchants, the duties on merchandise imported by them, and
for which bonds had been given, but which remained unpaid. The United States had
retained, from money awarded under the treaty with France to Lemuel Taylor, who was
the surety in the bonds, a sufficient sum to pay the bonds; but had not appropriated the
same towards their satisfaction. The assignees claimed to set off against the demand
of the United States the amount due by Lemuel Taylor to the estate they represented,
he having been discharged by the insolvent laws of Maryland. The Court said; "what-
ever might be the merits of such an equitable claim, in any suit brought by Lemuel
Taylor, the insolvent, or by his assignee, against S. Smith and Buchanan, or against
their assignees; it could have no proper place in a suit brought by the United States to
recover demands justly due to them for duties. It was to them res inter alios acta, and
the United States were not called upon to engage in, or to unravel any of the accounts
and set-offs existing between those parties, in a suit at law like the present."
The importers of goods do, in virtue of the importation thereof, become personally indebted
to the United States for the duties thereon; and the remedy of the United States for the
duties is not exclusively confined to the lien on the goods, and the security of the bond
given for the duties. The duties due upon all goods imported constitute a personal
debt due to the United States from the importer; independently of any lien on the goods
and of any bond given for the duties. The consignee of goods imported is for this pur-
pose treated as the owner and importer.
The right of the government to the duties accrues, in the fiscal sense of the term, when
the goods have arrived at the port of entry. The debt for the duties is then due, although
it may be payable afterwards according to the regulations of acts of Congress.
The debt due to the United States for duties on imported merchandise, is not extinguished
by the giving of bonds, with surety, for the same. The revenue collection act of 1799,
ch. 128, requires that the collector should take the bonds for the duties from all the per-
sons who are the importers; whether they be partners, or part owners.
The government of the United States have a right to retain money in their hands belonging
to a surety in a bond given for duties which is unpaid, until a suit shall be terminated
for the recovery of the amount of the duties on the goods due by the importers. The
government is not obliged to appropriate the money of the surety to the satisfaction of
the bond, but may hold it as a security until the suit is determined.

IN error from the Circuit Court of the United States for the dis-
trict of Maryland.

The United States instituted an action of assumpsit against Jonathan
Meredith and Thomas Ellicott, to recover from them, as the assignees
of Samuel Smith, James A. Buchanan, and Thomas A. Buchanan,
formerly trading as merchants under the firm of S. Smith and Bu-
chanan, a certain amount due to the United States for duties; the
United States claiming a right of priority of payment against the
estate in the hands of the trustees. The deed of trust to the plain-
tiffs in error was executed by S. Smith and Buchanan, on the 9th
of November, 1820.

In July, 1818, there was imported into Baltimore, by S. Smith
and Buchanan, and by Hollins and M'Blair a quantity of mer-
chandise from Canton on board the brig Unicorn, and in February,
1819, the same persons imported from Calcutta a quantity of mer-
chandise on board of the ship Brazilian. In the importation by the

Unicorn, S. Smith and Buchanan had an interest of two-thirds, and of five-ninths in the cargo of the Brazilian; the remaining interest in both importations belonging to Hollins and M'Blair.

Entries of the merchandise of both cargoes were made by John Smith Hollins, one of the joint importers, and a partner in the firm of Hollins and M'Blair; who, with James A. Buchanan, also one of the joint importers, and a partner in the firm of S. Smith and Buchanan, and a certain Lemuel Taylor, executed to the United States their joint and several bonds for the payment of the duties.

Upon these bonds, the United States afterwards instituted actions against each of the obligors, and recovered judgments in the Circuit Court for the district of Maryland. These judgments have been twice revived by scire facias; and are now in full force and unreversed.

S. Smith and Buchanan afterwards became insolvent, as also did Lemuel Taylor. A large sum of money was awarded under the treaty with France to Lemuel Taylor, which was claimed by Mr. Colt, his assignee: but the United States withheld a part thereof, being the amount of the bonds given for the duties on the importations by the brig Unicorn and ship Brazilian, for which Lemuel Taylor was surety. A large sum of money was also awarded to Smith and Buchanan, under the treaty with France, which was paid to Messrs. Meredith and Ellicott, their assignees. The sum so received by the assignees was sufficient to pay the amount claimed by the United States for the duties on the portions of cargoes of the Unicorn and Brazilian, which had been imported by S. Smith and Buchanan, but not enough to pay their partnership debts. The United States had not adverted to the alleged liability of S. Smith and Buchanan; for the duties unpaid on their importations, when the awards under the French treaty were paid to their assignees.

The case was tried before the Circuit Court of Maryland, and a verdict rendered in favour of the United States. The defendants prosecuted this writ of error.

In the progress of the trial, the defendants, now plaintiffs in error, offered evidence to prove, that at the time of Lemuel Taylor's application for the benefit of the insolvent laws of Maryland, he was indebted, and still remains indebted to the estate of S. Smith and Buchanan, in a sum more than sufficient to pay the whole amount due upon the several bonds for duties before-mentioned; but the admissibility of this evidence was objected to by the counsel for the United States, and the Court sustained the objection.

The case was argued by Mr. Johnson and Mr. Meredith for the plaintiffs in error; and by Mr. Nelson for the United States.

For the plaintiffs in error it was contended:—

That the evidence ought to have been admitted.

And upon the main questions in the case it was further contended—

I. That the debt to the United States for the duties on ine two joint importations by the Unicorn and Brazilian, arose exclusively upon the bonds given therefor; and that the United States had never any other cause of action for said duties.

II. That if S. Smith and Buchanan were liable to the United States for said duties, before the execution and delivery of the bonds, then the same, having been given and accepted, operated in law as an extinguishment of such previous liability.

III. That the United States have been fully paid and satisfied the amount due for duties on the said joint importations out of the moneys received on account of the awards in favour of the trustees of Lemuel Taylor, under the French treaty.

Mr. Meredith and Mr. Johnson for the plaintiffs in error, contended that the set-off of the debts due by Lemuel Taylor to S. Smith and Buchanan should have been allowed. The real parties in the cause were the assignees of S. Smith and Buchanan, and the assignee of Lemuel Taylor. The United States had no interest in the controversy. The suit was brought in the name of the United States, and its effect, if successful, would be to relieve from the lien of the United States the funds retained by them from the French indemnity, and to enable the assignees of Lemuel Taylor to receive the amount from the treasury of the United States. The case therefore, stood, in fact, as a controversy between the estates of the insolvents represented by assignees. The United States have expressly disclaimed, by the law officer, all interest in the cause. Under such circumstances, the law of set-off fully applies. Cited, 1 Term Rep. 621. 1 Washington C. C. R. 427. 3 East's Rep. 257. 10 Wendall's Rep. 504.

The bonds operated as an extinguishment of the debt for the duties which were due by the importers, and which were a lien on the goods, until the bonds were given. On the execution of the bonds, which were received by the collector as the substitute for the responsibility of the importers, and the lien on the goods, the claim of the United States was upon the bonds only.

The only case which interferes with this position, is that of the United States *vs.* Lyman, 1 Mason's C. C. R. 582. This is the only case in which an action for debt has been brought for duties claimed by the United States. It stands alone among the decisions of the Courts of the United States; for although Mr. Justice Washington, in 2 Washington's Circuit Court Reports, 508, affirms the law as stated in the case of the United States *vs.* Lyman, yet it was not the question before him.

In the case of The United States *vs.* The Assignees of Inskeep and Bradford, 3 Wash. C. C. Rep. 508, it was decided by Mr. Justice Washington, that the assignees of Bradford and Inskeep, the assignors having become insolvent, were not liable out of the estate assigned for duties on merchandise imported by Bradford and Inskeep, for which Bradford had given a bond to the United States. The bond was an extinguishment of the original debt. Cited also,

9 Bingham, 341.. 23 Serg. and Lowber's English Com. Law Rep. 300. 10 Ibid. 55. 1 Mass. 53. .

There is nothing in the act of Congress which looks to any other obligation for the duties but the bond. In that act, the bonds are called bonds for the payment of the duties, and bonds for the duties.

Mr. Nelson, for the defendants-in error, insisted : :

1. That S. Smith and Buchanan, by virtue of the importations of 1818 and 1819, in the Unicorn and Brazilian, became personally liable to pay to the United States two-thirds of the duties accruing upon the first, and five-ninths of the duties accruing upon the last importation.

2. That being so personally liable, they were debtors to the United States to the extent of that liability, on the 9th of November, 1820.

3. That the deed of conveyance from S. Smith and Buchanan to the plaintiffs in error, of the 9th of November, 1820, was such as to entitle the United States to a priority in the distribution of the funds received under said deed, &c.

4. That having shown the sum of sixty thousand dollars in the hands of the plaintiffs in error, received under the said conveyance, the Circuit Court did not err in giving the instructions asked for by the defendants in error, at the trial below.

In support of the first proposition, Mr. Nelson referred to the acts of Congress of the 27th of April, 1816, section 7; and of the 3d March, 1799, sections 30. 36. 49. 53. 56. 62.

To show that the duties accrued upon the importation, he referred to Attorney-General *vs.* Strangforth, Bunbury, 97. Hargrave's Law Tracts, 212, 213. The Schooner Boston, 1 Gallison's Reports, 240. The Mary, ibid. 206. United States *vs.* Arnold, ibid. 348. (S. C.) 9 Cranch, 104. United States *vs.* Prince, 2 Gallison, 204. United States *vs.* Vowell, 5 Cranch, 368. United States *vs.* Lyman, 1 Mason's Reports, 499.

And that the obligation for the payment of the duties thus accruing, attached to the importers personally and immediately, he maintained by a reference to Salter *vs.* Malapere, 1 Rolle's Reps. 382. Comyn's Digest, title Debt, (A. 9.) 2 Anstruther's Reports, 558. Parker's Reports, 279. United States *vs.* Lyman, 1 Mason, 499. United States *vs.* Aborn and others, 3 Mason, 130.

The third and fourth propositions, Mr. Nelson stated, were clear upon the terms of the conveyance, which was. for all the property of the grantors. 1 Kent's Commentaries, 229—233. Gordon's Digest, 62, and notes.

Having thus shown a once subsisting claim against S. Smith and Buchanan, whose assignees the plaintiffs in error were, Mr. Nelson proceeded to inquire whether there was any thing in the case made by the evidence offered by the plaintiffs in error at the trial below, to impair or discharge that claim : and he argued that there was not.

1. Because the bonds exhibited in the record operated no extinguishment of the demand for duties.

2. Because the judgments and the proceedings thereon, offered in evidence by the defendants below, could produce no such effect: and,

3. Because the record showed no payment or satisfaction of the claim in law or in fact.

The bonds, Mr. Nelson argued, did not extinguish the claim for duties arising upon the importations; since, if even taken in pursuance of the acts of Congress, they were mere securities, and collateral to the original liability.

That the provisions of the acts of Congress must be regarded as incorporated in the bonds, and as evidencing the terms upon which they were taken at the customhouse.

That those provisions showed that it never was the design of their enactment, that the bonds should be taken in satisfaction; but, on the contrary, were looked to as mere securities. And in support of this view, Mr. Nelson referred and commented upon the acts of Congress, of the 4th of July, 1789, of 1799, ch. 128, sec. 36. 49. 62. 1 Mason's Rep. 482. 3 Mason, 130. Knox *vs.* Divers, 5 Mason, 395. Tom *vs.* Goderich, 2 Johnson's Reports, 213. Sherby *vs.* Champlin, 4 Johns. Reps. 465. United States *vs.* Astley and others, 3 Washington's C. C. Reps. 508.

But he insisted that the bonds in question were not statutory instruments: that they were voluntary and therefore collateral; and consequently operated no extinguishment.

That no one but the owner or owners, importer or importers, consignee or consignees, were authorised to demand a credit for duties, and to give bonds. Act of 1799 ch. 127, sec. 62. Harris *vs.* Dennie, 3 Peters' Supreme Court Reports, 304.

That in this case, the importers were Hollins and M'Blair, and S. Smith and Buchanan. That the bonds were not executed by them, but by John S. Hollins, as principal, and James A. Buchanan and Lemuel Taylor as sureties. That they were, therefore, the bonds of others than the importers, owners, and consignees; of a third person, or mere stranger, which could not operate an extinguishment of the simple contract debt, they being voluntary.

That John S. Hollins was one of the firm of Hollins and M'Blair, Mr. Nelson argued could make no difference, since the acts of Congress provide for no such case; and although it might be true, as between individuals, that the bond or other specialty of one partner would extinguish a simple contract debt due from the partnership, the law presuming, in the absence of proof to the contrary, that the creditor in accepting such bond or specialty, receives it in payment; yet under the acts of Congress, bonds of like character could have no such effect: precisely because no such presumption could exist in relation to an officer purely ministerial, the collector having no authority to assent to any bond other than such as conform to the requirements of the statute.

That such an interpretation of the act of Congress was repugnant

to the obvious policy of its framers, since it would be calculated to defeat the priority claim of the government against partnership effects, which it was their manifest design effectually to protect.

But Mr. Nelson denied that these were bonds given by a partner for a partnership debt; maintaining that the evidence and verdict stated in the record showed that S. Smith and Buchanan were separate importers for their proportions of the cargoes upon which the duties accrued; and that the bonds being given by John S. Hollins, who was not a member of their firm, were clearly the bonds of a stranger, which could not extinguish the simple contract liability.

That the judgments and the proceedings thereon did not extinguish the claim of duties, he maintained, since the bonds being collateral, and the obligation created by them coexisting with the original liability, it was competent to the United States to pursue all proper remedies upon the securities, without discharging the original responsibility of the importers; and he referred in support of this position to Drake *vs.* Mitchell, 3 East's Rep. 251.

To show that there had been no payment in law, he referred to the provisions of the treaty with the King of the French, of the 4th of July, 1831, and to the act of Congress of the 13th of July, 1832; to The United States *vs.* Aborn and others, 3 Mason's Reports, 130; and Martin *vs.* Mechanics Bank of Baltimore, 6 Harr. and Johns. 235; 2 Espinasse's Cases, 668.

That there had been no payment in fact, he showed, by a reference to the correspondence contained in the record.

Upon the first exception Mr. Nelson contended there was no error, because Lemuel Taylor was no party to the suit; the United States were the plaintiffs, not only nominally but substantially and really; and that their right of recovery could be in nowise affected by the state of the accounts between S. Smith and Buchanan, and Lemuel Taylor.

Mr. Justice STORY delivered the opinion of the Court.

This is a writ of error to the Circuit Court for the district of Maryland. The original action was assumpsit brought by the United States against the plaintiffs in error, who were the original defendants, to recover from them, as assignees under a general assignment of the property of the firm of Smith and Buchanan, the amount of certain duties alleged to be due from the said firm upon certain importations in the brig Unicorn and the ship Brazilian, out of the funds in the hands of the assignees, upon the ground of an asserted right of priority of the United States to payment out of the same funds.

At the trial, upon the general issue, the material facts appeared as follows. In the years 1818 and 1819 Smith and Buchanan, and Hollins and M'Blair, two separate commercial firms in Baltimore, imported, on their own account as owners, a quantity of goods from Calcutta in the brig Unicorn and ship Brazilian above mentioned,

on which the present duties were claimed. Smith and Buchanan were the importers and owners of two-thirds of the cargo of the ship, and five-ninths of that of the brig; and that proportion went to their possession and use. The remainder of both cargoes belonged to Hollins and M'Blair. The entries of both cargoes were made at the customhouse at Baltimore by John S. Hollins, one of the firm of Hollins and M'Blair, as imported in the vessels, respectively, by Hollins and M'Blair, and Smith and Buchanan; and Hollins gave bonds for the duties in the common form in his own name; and James A. Buchanan, of the firm of Smith and Buchanan, and Lemuel Taylor, who is admitted to be a mere surety, also executed the same bonds. The condition of the bonds was for the payment of the duties on the goods "entered by the above bounden John S. Hollins, for Smith and Buchanan, and Hollins and M'Blair, as imported" in the ship and brig respectively. Upon these bonds the United States afterwards instituted actions against each of the obligors, and recovered judgments in the Circuit Court for the District of Maryland. These judgments have been revived, and are now in full force and unreversed. Smith and Buchanan became insolvent; and after the rendition of the judgments, Taylor also became insolvent under the insolvent laws of Maryland. One Rosewell L. Colt became the trustee of Taylor; and afterwards, under the treaty of indemnity with France, a large sum of money was awarded to him by the commissioners; and a large sum of money was also awarded to Smith and Buchanan, which has been received by the original defendants as their assignees, and is more than sufficient to pay the sums now claimed by the United States, but not enough to pay the partnership debts of the firm of Smith and Buchanan. Taylor applied to the treasury department for the usual certificates granted to claimants by the awards under the treaty; but they were refused by the department upon the ground of Taylor's indebtment to the United States upon the aforesaid bonds and judgments. Since that period an arrangement has been made between the government and Colt, the trustee, by which a sufficient sum of the moneys so due by Taylor is reserved in the treasury to secure the amount of the judgments on the bonds against Taylor, and the residue has been paid over to the trustee. And the present action has been brought by the United States for the benefit of Taylor's trustee, in order to give to the latter the full rights and remedies of the United States to a priority of payment out of the moneys of Smith and Buchanan, in the hands of the defendants as their assignees. To repel the supposed equity in Taylor, as a surety, the defendants offered to prove that at the period of the application of Taylor for the benefit of the insolvent laws, he was largely indebted to Smith and Buchanan, and in a sum more than sufficient to cover the whole amount due upon the duty bonds aforesaid, and still remained so indebted. The Court rejected the evidence, and to this rejection the defendants excepted. And this constitutes the first bill of ex-

ceptions. Upon this we have no more to say than that we think the ruling of the Court was clearly right. Whatever might be the merits of such an equitable claim in any suit brought by Taylor or his assignee against Smith and Buchanan, or their assignees; it could have no proper place in a suit brought by the United States to recover demands justly due to them for duties. It was, as to them, res inter alios acta; and the United States were not called upon to engage in or to unravel any of the accounts and set-offs existing between those parties, in a suit at law like the present.

Afterwards the United States asked an instruction to the jury, which was given to the jury, to which the defendants excepted. The defendants then prayed certain instructions to the jury, which the Court refused to give; to which refusal the defendants also excepted. These exceptions are spread at large upon the record, and constitute the second bill of exceptions. It is unnecessary to recite them at large, as they are all resolvable into the leading points which have been so fully argued at the bar; and we shall therefore proceed at once to the consideration of these points.

The first question is, whether Smith and Buchanan were ever personally indebted for these duties; or, in other words, whether the importers of goods do, in virtue of the importation thereof, become personally indebted to the United States for the duties due thereon; or the remedy of the United States is exclusively confined to the lien on the goods, and the security of the bond given for the duties. It appears to us clear upon principle, as well as upon the obvious import of the provisions of the various acts of Congress on this subject, that the duties due upon all goods imported constitute a personal debt due to the United States from the importer, (and the consignee f. this purpose is treated as the owner and importer,) independently of any lien on the goods, and any bond given for the duties. The language of the duty act of the 27th of April, 1816, ch. 107, under which the present importations were made, declares that "there shall be levied, collected, and paid," the several duties prescribed by the act on goods imported into the United States. And this is a common formulary in other acts laying duties. Now, in the exposition of statutes laying duties, it has been a common rule of interpretation derived from the principles of the common law, that where the duty is charged on the goods, the meaning is that it is a personal charge on the owner by reason of the goods. So it was held in Attorney-general vs. ———, 2 Anst. R. 558, where a duty was laid on wash in a still; and it was said by the Court that where duties are charged on any articles in a revenue act, the word "charged" means that the owner shall be debited with the sum; and that this rule prevailed even when the article was actually lost or destroyed before it became available to the owner. Nor is there any thing new in this doctrine; for it has long been held that in all such cases an action of debt lies in favour of the government against the importer, for the duties, whenever by

accident, mistake, or fraud, no duties, or short duties have been paid.

The question has also been asked, at what time the right of the government to the duties accrues in the fiscal sense of the terms. The answer is, at the time when the goods have arrived at the proper port of entry. This is the established rule adopted by the government in all cases where there has been a new act passed, increasing or diminishing the duties to be paid on goods imported after a specified period. The same doctrine was affirmed by this Court in the cases of The United States *vs*. Vowell, 5 Cranch, 368; and of Arnold *vs*. The United States, 9 Cranch, 104. But although the duties thus accrue to the government as a personal debt of the importer, upon the arrival of the goods in the proper port of entry; yet it is but a debitum in presenti solvendum in futuro, according to the requisitions of the revenue collection act of the 2d of March, 1799, ch. 128; and, therefore, if a deposit of the goods is made by the importer, or a bond is given by him for the duties, pursuant to the provisions of that act, the importer is entitled to the full credit allowed by that act. But it is a mistake to suppose that if a deposit is made of the goods, either with or without a bond given for the duties, the rights of the government for the duties are limited to the lien upon the goods; and cannot, if they are lost or destroyed, be made a personal charge against the importer. On the contrary, the revenue collection act of 1799, ch. 128, s. 62, expressly declares that the goods deposited shall be kept by the collector with due and reasonable care, at the expense and risk of the party on whose account they have been deposited. Our opinion, therefore, on this point is, that the duties due upon goods imported, constitute a personal debt, and charge upon the importer, as well as a lien on the goods themselves.

In the next place, was the debt due for the duties on the goods imported, in the present case extinguished by giving the bond by Hollins, in the manner before stated? We have no doubt that these bonds, being voluntary bonds, are valid; and that Hollins and his sureties are estopped to deny their validity. But the question is not whether they are valid; but whether they are the proper statute bonds contemplated by the revenue act of 1799, ch. 128. It is to be observed that the present case is not one where the bonds were given by the sole importer of the goods; so that the sole question would then be, whether the bond of the same party, who was personally liable for the duties, supposing the bond to cover all the duties due and payable on the goods, was an extinguishment of the simple contract debt for those duties. But the present is a case where one of several partners, and one of several joint importers, has given his separate bonds for the duties due by law by all the importers, either as partners or as part owners; and therefore, where the true question is whether such bonds under such circumstances amount to an extinguishment of the debt due by all the

other importers, as partners or as part owners. It is certainly encumbent upon those who assert the affirmative, to show by some clear and determinate language of the revenue collection act of 1799, ch. 128, that the collector was thus authorized to take the separate bonds of one of the importers for the debt of all; and that it was the legislative intention that such separate bonds, when taken, should operate as an extinguishment of the liability of all the other importers. Now, it is plain, that where the goods are received on deposit, the whole goods, and not merely the share of the partner giving the bonds, are liable for the duties.

Upon a careful review of the other provisions of the act, we are equally well satisfied that in every case within the act, the bond for the duties is required to be given by all the persons who are the importers, whether they be partners or part owners; and that the collector is not by law authorised to take the separate bond of one of the importers in extinguishment of the joint liability of all. The language of the 62d section of the act is, "that all duties on goods, wares, or merchandise imported shall be paid, or secured to be paid, before a permit shall be granted for landing the same; and where the amount of such duty on goods imported in any ship or vessel, on account of one person only, or of several persons jointly interested, shall not exceed fifty dollars, the same shall be immediately paid; and if it exceed that sum, shall, at the option of the importer or importers, be paid, or secured to be paid, by bond." Now, construing this language distributively, as in our judgment it ought to be construed, to mean by the importer when there is one only, and by all the importers when there is more than one, there is not the slightest difficulty in giving full effect to every word of the act. Construe it the other way, and the word "importers" has no appropriate use, which is not included in the other language. The very form of the bond given in th, same section, also, shows that it was the intent of the act that all the importers should be parties to the bond; for it prescribes, "Know all men by these presents that we (here insert the name of the importer or consignee; or if by an agent the name of such agent, and of the importers or consignees, and the sureties, their place of abode, and occupation,) &c." It is not unimportant, also, to consider what would be the consequence of a different construction of the act; for if it would lead to great insecurity in the collection of the public revenue, and enable importers to substitute almost at their own discretion the liability of one of the firm, or one part owner for the liabilities of all, it would open the way not only to many intentional evasions and frauds upon the just right of the government, but also, in cases of the death or insolvency of the acting partner, or part owner, leave the government without redress against those who had almost exclusively enjoyed all the benefits of the importation. On the other hand, the construction which we put upon the act imposes the burden upon those who have enjoyed the benefits; and creates a common interest in a vigilant and prompt

discharge of that burden. Nor is there any inconvenience in it; for if all the importers are not present, a letter of attorney may readily be executed, which will meet every exigency of commercial business. And we cannot but think that the 25th section of the act of 1823, ch. 149, which provides that any bond to the United States entered into for the payment of duties by a merchant belonging to a firm, in the name of such firm, shall equally bind the partner or partners in trade of the person or persons by whom such bond shall have been executed, was intended to meet cases of this sort; and that it demonstrates the understanding of Congress, that by the existing law then in force, all the partners were required to join in the bond for the duties.

The remaining point is, whether under the circumstances of the present case, the government has actually received payment of the duties in controversy. We think it has not. By the payment of the moneys due under the French treaty, and the awards of the commissioners, there was originally in the hands of the government the sum of sixty thousand dollars awarded to Smith and Buchanan, which was properly and primarily applicable to the discharge of these very duties. But by mere mistake, arising from the circumstance that Hollins alone appeared the principal in the bonds, and Smith and Buchanan being unknown to have been the original importers, that sum was paid over by the government to the present defendants, as assignees. Had the facts been known, the present controversy would have stopped at the threshold, by recouping or retaining the amount from the awards. The government has now in its possession the funds, under the awards due to Taylor, the surety on these bonds; and it certainly had the power, if it pleased, to appropriate the same in payment of the debt. The question is, whether it has so done. Looking to the whole transactions, we are satisfied that it has not. It retains the funds of Taylor in its hands as security for payment, if the present suit should not be successful; and it has allowed the suit to be brought in the name of the United States, for the benefit of Taylor. It has thus carried out the intent and spirit of the act of 1799, ch. 128, sec. 65, which declares that the surety paying a bond for duties shall have and enjoy the like advantage, priority, or preference for the receipt of the said moneys out of the effects of the insolvent, as are reserved and secured to the United States. We think, then, that no payment has been made; but that Taylor's funds have been held as a mere special deposit for the indemnity of the government, and to abide the event of the suit; and that to give a different construction to the acts of the officers of the government would defeat their true objects, as well as the purposes of substantial justice.

Upon the whole, we are of opinion that the judgment of the Circuit Court ought to be affirmed.

The case of Nathaniel Williams, and another, *vs.* The United States, which was submitted to the Court upon the argument in

the present case, is far less stringent in its circumstances in favour of the defendants; and involves far less difficulty. The judgment in that case is also affirmed.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the district of Maryland, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed.