## GROSVOLD v. WHELPLEY.

### (Third Division. Valdez. August 12, 1916.)

### No. 804.

1. PUBLIC LANDS ☞96—RESERVATIONS IN ALASKA.

The defendant, for his principal, purchased the buildings, foxes, etc., of one Reed, who was engaged in raising foxes on Little Koniuji Island, Alaska, in 1913, and thereafter engaged in the business of raising foxes on that island. In 1914 the Secretary of Commerce offered the island for lease to the highest bidder. Defendant's principal bid; but, plaintiff's bid being the highest, he received the lease on July 30, 1914, for a term of five years. Defendant refused to vacate the island and claimed all the foxes then running wild thereon. Plaintiff brought suit for possession and for damages. The court *held* the defendant is a trespasser. The Secretary of Commerce had authority to lease the island to plaintiff, who is entitled to possession of the premises.

2. PUBLIC LANDS ☞47—RESERVATIONS IN ALASKA.

A reservation may be made either by treaty, by executive order, or by an act of Congress, and all of these methods are expressly recognized by the homestead and pre-emption laws. No set form of words or phrases is necessary to set aside a reservation. The sovereign is not parting with the title, but only setting it apart to be used for specific purposes. It is enough, if there are sufficient words to indicate the purpose of the power that can act, to show that in the given case it intended to act.

3. PUBLIC LANDS ☞96—RESERVATIONS IN ALASKA.

Although it may be true that prior to 1898 the Secretary of the Treasury, who had assumed authority to lease islands for the propagation of foxes, had no statutory authority to do so, nevertheless there is no question that, subsequently to that time, he had statutory authority to make such leases, as the above proviso, by excepting such islands from entry and sale, withdrew them from the public domain and set them apart for that purpose.

Prior to 1898 Little Koniuji Island, near Unga, Alaska, had been leased by the Secretary of the Treasury of the United States for the sum of $100 per annum for the purpose of raising foxes. After 1900 it seems the government no longer required the payment of any rental. Said island continued to be occupied by various persons for the raising of foxes until in 1913 one Lawrence Reed made a bill of sale to the defend-

ant in this action, F. E. Whelpley, of "all live blue foxes, buildings, boats, and equipment used in the propagation of blue foxes on Little Koniuji Fox Island, Alaska," for the consideration of $4,000. The defendant testified that this purchase was made, not for himself, but for the Provincial Fox Company, who furnished the money.

On the 30th of July, 1914, the United States of America, by Edward F. Sweet, Assistant Secretary of Commerce (in accordance with and by virtue of the authority conferred by executive orders of February 2, 1904, and March 25, 1910), leased to the plaintiff, A. Grosvold, the said Little Koniuji Island for the term of five years, commencing on the 1st day of July, 1914, for an annual rental of $205, for the purpose of raising and propagating fur-bearing animals thereon.

The defendant testified that he notified his principal of the call for bids on the part of the government for the leasing of said island, and his principal notified him that they put in a bid therefor.

There were some foxes on the said island on the 1st day of July, 1914, belonging either to the defendant or his principal, which the defendant claimed the right to remove.

James & Wooley, of Seward, for plaintiff.
Donohoe & Ritchie and J. Lindley Green, of Seward, for defendant.

BROWN, District Judge. Defendant denies the validity of the lease from the United States to the plaintiff, contending that there is no authority of law for making said lease.

Executive order of February 2, 1904, is as follows:

"It is hereby ordered, that the authority of the Secretary of the Treasury to lease certain islands in Alaska for the propagation of foxes, and all duties and powers pertaining thereto, shall be transferred to and vested in the Secretary of Commerce and Labor."

Executive order of March 25, 1910, is as follows:

"It is hereby ordered, that the authority transferred to and vested in the Secretary of Commerce and Labor by the executive order of the President dated February 2, 1904, to lease certain islands in Alaska for the propagation of foxes, and all duties and powers pertaining thereto, shall be extended to include the authority to lease the islands for the propagation of other fur-bearing animals in addition to foxes; this order to take effect March 25, 1910."

The authority of the Secretary of Commerce to lease certain islands in Alaska for the propagation of foxes has been sustained and upheld by the Attorney General in an opinion given to the Secretary of Commerce and Labor of date June 24, 1905, and is found in volume 25 of Opinions of Attorneys General at page 497. In said opinion the Attorney General among other things says:

"It appears that, beginning in 1882, and since that time, the Secretary of the Treasury assumed and exercised authority to lease various other islands in the waters of Alaska for the propagation of foxes. Such action seems to have been originally without statutory sanction, but in the act of May 14, 1898 (30 Stat. 409, 413), extending the homestead laws to Alaska, Congress incorporated the following provision: 'Provided, that the Annette, Pribilof Islands, and the islands leased or occupied for the propagation of foxes be excepted from the operation of this act.'

"It is not suggested that the authority of the Secretary of the Treasury in the premises was ever questioned, and such an uninterrupted and long-continued practice, supported by the above-quoted statutory evidence of legislative acquiescence, seems to clearly establish the authority of the Secretary of the Treasury to continue to lease for this purpose such islands in Alaska as had been so leased by him prior to the act of May 14, 1898.

"February 2, 1904, the President issued an executive order in the following language: 'Upon the recommendation of the Secretary of the Treasury and the Secretary of Commerce and Labor, it is hereby ordered that the authority of the Secretary of the Treasury to lease certain islands in Alaska for the propagation of foxes, and all duties and powers pertaining thereto, shall be transferred to and vested in the Secretary of Commerce and Labor.'

"The authority of the President to make this order, especially in the absence of any inconsistent statutory provision, seems to be beyond question. 7 Ops. Atty. Gen. 453, 462, 469; 9 Ops. Atty. Gen. 462; 25 Ops. Atty. Gen. 11; Lockington v. Smith, Pet. C. C. 466 [Fed. Cas. No. 8,448].

"You are therefore advised that, in my opinion, you are now authorized to lease, for the propagation of foxes, such islands in the waters of Alaska as had been so leased by the Secretary of the Treasury prior to May 14, 1898."

The defendant argues that the Attorney General is mistaken, and that the government of the United States has no authority to lease these islands, including the said Little Koniuji Island.

In an opinion given by the Solicitor of the Department of Commerce to the Secretary of Commerce October 23, 1913, "In re Authority of the Secretary of Commerce to Lease Lit-

tle Naked Island for Purposes of Fox Propagation," the Solicitor says:

"The term 'reservation,' as used in relation to the public lands, means a withdrawal of a specified portion of the public domain from the administration of the Land Office, and from disposal under the land laws, and the appropriation thereof, for the time being, for some particular use or purpose of the general government. 32 Cyc. 858. In United States v. Payne [D. C.] 8 Fed. 888, Mr. Justice Parker says: 'A reservation may be made, either by treaty, executive order, or by act of Congress, and all of these methods are expressly recognized by the homestead and pre-emption laws. No set form of words or phrases is necessary to set aside a reservation. The sovereign is not parting with the title, but only setting it apart to be used for a specific purpose. It is enough, if there are sufficient words to indicate the purpose of the power that can act, to show that in the given case it intended to act.' And in Wilcox v. McConnel, 13 Pet. 496, 512 [10 L. Ed. 264], an appropriation is defined 'as nothing more nor less than setting apart the thing for some particular purpose.'

"The act of May 14, 1898, entitled 'An act extending the homestead laws and providing for right of way for railroads in the District of Alaska, and for other purposes' (30 Stat. 409 [U. S. Comp. St. 1916, § 5091]), contains the following proviso: *(Certain islands reserved.)* 'Provided, that the Annette, Pribilof Islands, and the islands leased or occupied for the propagation of foxes be excepted from the operation of this act.'

"As Little Naked Island, at the time of the passage of this act, was under lease by the Secretary of the Treasury for the purpose of propagating foxes, it was clearly included in this proviso and excepted from entry and sale, and thereby severed from the mass of public lands, for the manifest purpose that it might be continued to be leased as theretofore. No distinction can be made between it and the other islands included in the proviso and theretofore leased for the purpose of fox propagation. Although it may be true that prior to 1898 the Secretary of the Treasury, who had assumed authority to lease islands for the propagation of foxes, had no statutory authority to do so, nevertheless there is no question that subsequently to that time he had statutory authority to make such leases, as the above proviso, by excepting such islands from entry and sale, withdrew them from the public domain and set them apart for that purpose."

Furthermore, it does not appear that the defendant is in position to question this right or authority. Whatever rights he or his principal may have had were those of a trespasser only, and he or his principal were fully advised of the intention to lease the island, and submitted a bid therefor.

As to the question of the just and practical working of such a system of leasing, that is not a matter for the court to deter-

mine. The government has the right, through its various departments, to adopt such system in the matter of sale or leasing of its public lands as it deems best. There is little doubt but what, in all fairness, one who has in good faith, whether by lease or mere occupation, raised foxes upon one of these islands, should be given a reasonable time to remove them after the government has leased to some one else.

There is considerable dispute in the testimony as to what followed after plaintiff, Grosvold, secured his lease July 1, 1914. Probably it is true that, had both plaintiff and defendant acted with more forbearance and consideration toward each other, they would each have been saved considerable delay, annoyance, and expense.

The evidence of the defendant is not very satisfactory as to the ownership of the foxes on the island at the time Grosvold acquired his lease. It appears that the defendant was representing two companies, the Fundy Fox Company and the Provincial Fox Company. It is claimed by defendant's counsel that it is immaterial what defendant's relations were with these two companies; but it is a matter that does seem to have a bearing on the case, as affecting the credibility of the defendant himself.

On January 19, 1914, the said Fundy Fox Company wrote the following letter to the plaintiff:

"This is to inform you that Mr. F. E. Whelpley, who was formerly in our employ, is no longer connected with us in any of our enterprises. We will have a new manager shortly in the West, and will notify you as to who this new manager will be in a few days. We hope our new manager will be more successful in getting along with your good self than Mr. Whelpley was. We wish to have the good will of all the dealers and men of Unga and elsewhere, and hope we will do some business in the future to our mutual advantage."

And on January 21, 1914, another letter as follows:

"This is to notify you that Mr. Chesley D. Colwell has been appointed our representative in charge of our Alaskan business, and we hope to have your assistance and good will in any business he may undertake between the Fundy Fox Company, Limited, and your good self."

The defendant testified that Colwell, who it appears from the last-named letter was appointed as agent for the Fundy Fox Company, was by him authorized to trap foxes on the

Little Koniuji Island after Grosvold had acquired his lease, and that Colwell trapped some 74 foxes; but it does not satisfactorily appear just whom Colwell was working for, or who got the foxes. Whelpley testifies that he believes there were 100 pairs of foxes on this island July 1, 1914, when Grosvold acquired his lease. Plaintiff, Grosvold, testified that he entered into an arrangement or agreement with Colwell whereby Colwell was to have until September 1, 1914, within which to trap and remove the foxes. During this time Colwell took 74 foxes. In addition to this, Whelpley testifies that he or the men employed by him trapped 26 foxes in the fall of 1914, after Colwell left, to wit, after September 1, 1914; that during the year 1915 he got 14, and during the year 1916 16 additional foxes, making 56 in all. Whelpley further testifies that in his opinion there are 130 pairs of foxes on the island now. He claims he has a right to remove the foxes which were on there on July 1, 1914, and, while he had nearly two years in which to remove them, he says he cannot remove them in two years. According to his version, there are more foxes on the island now than there ever were, by reason of the natural increase, and in spite of the fact that 65 pairs, or 130, have been removed since July 1, 1914.

There is no doubt but what in all fairness Whelpley, or whoever owned these foxes prior to Grosvold's lease, was entitled to a reasonable time in which to remove the foxes. This Grosvold seems to have been willing to allow, and in all probability the defendant, or whoever the foxes belonged to, have trapped and removed all they were entitled to. To say that defendant can go on indefinitely and trap foxes on this island would be to annul the lease, and deprive the plaintiff of all rights thereunder.

Plaintiff testifies that he himself placed 16 foxes on this island in October, 1915.

I have carefully considered the claim of the plaintiff for damages against defendant, but I believe a fair and equitable adjustment of the whole controversy will best be had by allowing the injunction prayed for, without damages, but with costs to plaintiff.

Findings and decree may be accordingly prepared.