UNITED STATES v. ONE ESSEX COUPÉ (VOLK et al., Interveners). SAME v. ONE BUICK ROADSTER (QUICK, Intervener). SAME v. ONE PAIGE AUTO (WOODWORTH et al., Interveners).

(District Court, D. Montana. August 1, 1923.)

Nos. 1060, 1061, 1105.

Customs duties ⬿130—Internal revenue ⬿2—Statutes imposing taxes and providing for forfeiture of vehicles held in force.

Act Feb. 24, 1919, § 600 (Comp. St. Ann. Supp. 1919, §§ 5986e–5986i), as amended by Act Nov. 23, 1921, and Act Oct. 3, 1913, Schedule H, par. 237, imposing customs duty and internal revenue tax on production and importation of distilled spirits, and Rev. St. §§ 3062, 3450 (Comp. St. §§ 5764, 6352), forfeiting vehicles used to defeat such taxes, are not directly in conflict with the National Prohibition Act or Act Nov. 23, 1921, and under section 5 of the latter act were in force between July and September, 1922.

Libels by the United States against one Essex coupé, claimed by Charles Volk and others, against one Buick roadster, claimed by Eugene Quick, and against one Paige auto, claimed by Harry Woodworth and others. Decrees for the United States.

John L. Slattery, U. S. Atty., and Ronald Higgins and W. H. Meigs, Asst. U. S. Attys., all of Helena, Mont., for the United States.

Freeman, Thelen & Frary, of Great Falls, Mont., for claimants Volk et al.

Day & Mapes, of Helena, Mont., for other claimants.

BOURQUIN, District Judge. These libels are against three autos "used in the removal and for the deposit and concealment" of whisky with intent to defraud plaintiff "of the tax thereon," imposed and unpaid. They were seized in the act from July 15, 1922, to September 9, 1922. Two cases involve domestic liquors and acts, and innocent owners of the autos, and one foreign liquors being smuggled from Canada by the owner of the car. The facts are undisputed as alleged. The contention of the interveners and claimant is now, as before, that the revenue and tariff laws imposing taxes and duties on whisky, and forfeiture of vehicles in the instant circumstances, are repealed by the National Prohibition Act (41 Stat. 305).

In the beginning, this contention in various applications had considerable judicial acceptance, though of it was equal judicial rejection. That not the former, but the latter, correctly interpreted the act and congressional intent, was more of argument than assertion, reason than reaction, principle than prejudice, is evident from prompt congressional indorsement in Act Nov. 23, 1921, c. 134 (42 Stat. 222). In the latter

⬿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

act Congress virtually iterated its intent and purpose, if not its language, literally of the original act, that administration of the new policy of prohibition shall have all the sanctions of the old laws, as well as of the new, in so far as not inconsistent or not directly in conflict. The original act (section 35, tit. 2) provides that "all provisions of law that are inconsistent with this act are repealed only to the extent of such inconsistency," while Act Nov. 23, 1921, '§ 5, to meet the contention aforesaid and to terminate misinterpretation of the act and congressional intent, declares with significant emphasis and painful precision and plainness, not that any the former laws are repealed, not that any of them are re-enacted, but "that all laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws that were in force when the National Prohibition Act was enacted, shall be and continue in force, as to both beverage and nonbeverage liquor, except such provisions of such laws as are directly in conflict with any provision of the" acts, original and amendatory.

In the last analysis of practical application, this difference in congressional language will mean little (even to that erudition that can "a hair divide betwixt the north and northeast side"), save congressional final determination that its intent will be so clear it will penetrate and leave no shadow of excuse for misinterpretation. Adverting to the former laws at the time of the National Prohibition Act and these seizures, Act Feb. 24, 1919, '§ 600 (Comp. St. Ann. Supp. 1919, §§ 5986e–5986i), amended by Act Nov. 23, 1921, imposes on all distilled spirits thereafter produced or imported an internal revenue tax of at least $2.20 per gallon, and Act Oct. 3, 1913, par. 237, Schedule H (38 Stat. 135), imposes on such spirits thereafter imported a customs duty tax of $2.60 per gallon. And sections 3062, 3450, R. S. (Comp. St. §§ 5764, 6352), impose forfeiture of vehicles used to defeat these customs duty taxes and internal revenue taxes in circumstances like to these at bar.

It is too plain for argument that these former laws, if inconsistent, are not directly in conflict with the National Prohibition Act or the amendatory act, are laws to-day, and applicable to the libels at bar. The latter act effectually disposes of the contention otherwise aforesaid. See U. S. v. Stafoff, 43 Sup. Ct. 197, 67 L. Ed. ——. The earlier case of Lipke v. Lederer, 42 Sup. Ct. 549, 259 U. S. 557, 66 L. Ed. 1061, is not in point. It suffices to say that it involves penalties for crime, whereas these libels involve forfeiture for defeat of taxes incontestably existing. These taxes attach (1) when the spirits come into being (section 3248, R. S.; Comp. St. § 5982); and (2) when they enter the country. Meredith v. U. S., 13 Pet. 493, 10 L. Ed. 258; U. S. v. Ehrgott (C. C.) 182 Fed. 272.

It is found that all the allegations of the libels are proven and true, and that plaintiff is entitled to the forfeitures claimed. Decrees accordingly.