SILBERMAN-BECKER CORP. *v.* UNITED STATES (No. 4205)[1]

---

[1] C. A. D. 65.

United States Court of Customs and Patent Appeals, June 15, 1939

*Sharretts & Hillis (Edward P. Sharretts* of counsel) for appellant.

*Webster J. Oliver,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Samuel D. Spector,* special attorney, of counsel), for the United States.

[Oral argument April 12, 1939, by Mr. Edward P. Sharretts and Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, one judge dissenting, dismissing one protest and overruling another of the importer whereby it seeks to recover the sum of $2,233 assessed and collected as duty upon a bale of silver fox fur skins, undressed.

There is an agreed stipulation of facts which may be summarized as follows:

Two bales of fur skins said to have been destined for London, England, were shipped from Canada in bond to New York where, on February 25, 1935, they were entered in bonded warehouse under the provisions of the Tariff Act of 1930. The merchandise was ordered to the appraiser's stores and there examined. Three days after the warehouse entry, that is, on February 28, 1935, an export entry was made under section 557 of the tariff act, and the bales were shipped from the appraiser's stores in customs custody under cord and seal and under customs house license, delivered to a pier where they were received by the appropriate customs officials, and placed in the custody of customs guards. While in such custody one of the bales was stolen. The customs inspector reported the theft to the warehouse division of the New York Customs House by a notation on the export entry, reading: "bale #19 received but not shipped, pilfered on pier, reported to Surveyor March 5th, 1935."

Thereafter on June 11, 1935, the collector liquidated the entry with respect to the bale of furs so stolen and assessed duty thereon at the rate of 50 per centum ad valorem under paragraph 1519 (c) of the Tariff Act of 1930 which reads:

(c) Silver or black fox furs or skins, dressed or undressed, not specially provided for, 50 per centum ad valorem.

On August 5, 1935, the collector made demand upon the American Express Co., appellant's agent, for payment of the duties so assessed. This notice contained a statement reading: "This amount must be promptly paid or Surety will be suspended."

On August 6, 1935, appellant filed protest 29309/35, suit 803220–G, against such liquidation, alleging, *inter alia*, that:

The bale in question was never subject to customs duty. It was entered for warehousing and withdrawn for exportation to a foreign country. Section 557 of the Tariff Act of 1930 specifically exempts the merchandise in question from the assessment of duty.

On October 23, 1935, in compliance with the demand of the collector, appellant (its brief states in order to prevent suspension of the surety bond) paid the collector the sum of $2,233, and on December 11, 1935, filed a second protest, No. 44396/35, suit 883592–G, which was leveled against the exaction of the duties with the allegation that:

said exaction of $2,233.00 was illegal in that the merchandise in question was entered for warehousing and withdrawn for exportation and was not subject to an assessment of duty but under section 557 of the Tariff Act of 1930 was exempt from duty.

At the trial below the Government moved to dismiss appellant's second protest as untimely, and this motion was sustained by the majority with the following comment:

Aside from any other consideration of the sufficiency of protest 883592–G which might present itself in view of the unusual situation we find in this case, it is our view that the date of exaction was August 5, 1935, the date of the notice of duties due, rather than October 23, the date on which the same were paid. The notice was an act of the collector, while the payment of the duties was an act of the plaintiff. It therefore follows that the protest was not filed within sixty days after the collector's action complained of, and being so untimely it must be and is hereby dismissed.

On this phase of the case the dissenting judge said:

Two protests were filed and, in effect, treated as one case at the trial. One or the other, certainly, legally presents the claim for refund made and is timely. In such circumstances it becomes unnecessary to decide which is effective. The claimed result under either is the same, refund of all duty taken.

Appellant assigns error as to the dismissal of the second protest, but states in its brief:

It is, of course, immaterial to the appellant whether the present issue be decided upon one protest or two. He simply insists that the Collector has com-

mitted two illegal acts, both of which have been properly protested. As stated by Judge Brown in the dissenting opinion * * * "One or the other, certainly, legally presents the claim for refund made and is timely."

We do not regard the question of the timeliness of the second protest as being of sufficient consequence under the peculiar facts of this case to require any definite ruling here. Doubtless it was filed as a matter of precaution. No question has been raised as to the timeliness or sufficiency of the first protest, nor is there any suggestion that the judgment might have been different had the court considered the second protest. Consequently, we shall consider the case on the basis adopted by the majority below.

Therefore the issue is, did the loss of the merchandise while in customs custody, under the stipulated facts, relieve the appellant from the payment of duty thereon.

Appellant's contention is based solely upon section 557 of the Tariff Act of 1930, the pertinent provisions of which read as follows:

SEC. 557. ENTRY FOR WAREHOUSE—WAREHOUSE PERIOD—DRAW-BACK.

Any merchandise subject to duty, with the exception of perishable articles and explosive substances other than firecrackers, may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years (or ten months in the case of grain) from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal; or may be withdrawn for exportation or for transportation and exportation to a foreign country, * * * without the payment of duties thereon * * *.

Appellant contends in substance that when it withdrew the merchandise from bonded warehouse for exportation under section 557, the withdrawal constituted an extinguishment of appellant's personal debt to the Government for duties because said section provides that merchandise "may be withdrawn for exportation * * * without the payment of duties thereon * * *."

That the merchandise here involved was subject to duty when placed in bonded warehouse is clear, for the very first sentence of section 557 provides for the warehousing of only such merchandise as is subject to duty. If the furs here in question were not subject to duty there could have been no warehouse entry of them. It has been the rule for over one hundred years that the right of the Government to duties upon dutiable goods accrues when the goods have arrived at the port of entry, and that the duties become a personal debt of the importer. *Meredith* v. *United States*, 38 U. S. 486.

That merchandise entered for warehousing is subject to duty during the entire period that it remains in warehouse is made clear by section 559 which provides that merchandise upon which any duties or charges are unpaid, remaining in bonded warehouse beyond three

years from the date of importation, shall be sold by the Government, and that, in accounting for the proceeds of such sale to the owner, *duties*, charges, and expenses shall be deducted from such proceeds.

It is therefore clear that the furs in question, entered for warehousing, were subject to duty while so held, and the only contingencies under which they could be exempt from duty were the withdrawal for exportation under section 557, and the abatement or remission of duties by the Secretary of the Treasury under the provisions of section 563 of said tariff act, which latter section, so far as is here pertinent, reads as follows:

SEC. 563. ALLOWANCE FOR LOSS—ABANDONMENT OF WAREHOUSE GOODS.

(a) ALLOWANCE.—In no case shall there be any abatement or allowance made in the duties for any injury, deterioration, loss, or damage sustained by any merchandise while remaining in customs custody, except that the Secretary of the Treasury is authorized, upon production of proof satisfactory to him of the loss or theft of any merchandise while in the appraiser's stores, or of the actual injury or destruction, in whole or in part, of any merchandise by accidental fire or other casualty, while in bonded warehouse, or in the appraiser's stores, or while in transportation under bond, or while in the custody of the officers of the customs, although not in bond, or while within the limits of any port of entry and before having been landed under the supervision of the officers of the customs, to abate or refund, as the case may be, the duties upon such merchandise, in whole or in part, and to pay any such refund out of any moneys in the Treasury not otherwise appropriated, and to cancel any warehouse bond or bonds, or enter satisfaction thereon in whole or in part, as the case may be, but no abatement or refund shall be made in respect of injury or destruction of any merchandise in bonded warehouse occurring after the expiration of three years (or ten months in the case of grain) from the date of importation. The decision of the Secretary of the Treasury as to the abatement or refund of the duties on any such merchandise shall be final and conclusive upon all persons.

It follows from the foregoing that the only question to be considered is whether or not the withdrawal of goods for exportation, but without actual exportation, exempted the goods here involved from duty.

It is elementary that the master rule of construction is the intent of Congress. In the case of *Ozawa* v. *United States*, 260 U. S. 178, the court said:

It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, *sacrificing, if necessary, the literal meaning in order that the purpose may not fail.* * * * [Italics supplied.]

Applying the foregoing to the case at bar, a consideration of the provisions of sections 557 and 563 convinces us that the term "withdrawn for exportation" found in section 557 should be construed as if it read "withdrawn for exportation and exported." It is in-

conceivable to us that Congress could have intended that the mere act of withdrawal of goods for exportation should relieve such goods from assessment with duties, irrespective of whether or not such goods ultimately were exported. There could be no possible reason for exemption of goods from duty unless they were actually exported, and we hold that such exemption does not arise until exportation has actually taken place.

Section 563 expressly provides that there shall be no abatement or allowance made in the duties for any loss sustained by any merchandise while in customs custody, except in certain specified cases which, it is admitted, do not include the theft here involved. That the furs here in question were, at the time of their theft, in customs custody is conceded.

It is expressly provided in said section that theft of merchandise while in the appraiser's stores is ground for abatement by the Secretary of the Treasury of the duties chargeable against such merchandise. No such provision is found for abatement of duties chargeable against merchandise arising from theft of the same while in customs custody but not in the appraiser's stores.

It seems to us that here the doctrine *expressio unius exclusio est alterius* applies, and that there is no provision of law by which relief may be granted to appellant.

The dissenting opinion accompanying the decision of the trial court assumes that the basis of the holding of the majority was that the theft of the goods created a liability to pay duty thereon. We do not understand that the majority of the trial court so held, nor do we so hold. The theft of the goods created no liability. It was the failure to export the goods which prevented their exemption from duty to which they were subject when entered for warehousing.

Inasmuch as the goods were subject to duty until actually exported, the provisions of section 563 are applicable.

In conclusion, the construction here given to the term "withdrawn for exportation" contained in section 557 is supported by the last paragraph of said section wherein it is provided that "in lieu of exportation" goods entered under bond may be destroyed under customs supervision without payment of duty thereon.

If the loss occurred through the negligence of customs officials, as to which the stipulation is silent, it seems unjust to require the payment of duties upon the merchandise stolen; but, the statute affording no ground of relief, if relief is to be granted, appellant must address himself to the legislative department of the Government.

For the reasons hereinbefore stated, the judgment appealed from is *affirmed.*