NEW YORK & P. R. S. S. CO. v. McGOWIN LUMBER & EXPORT CO., Inc.

(Circuit Court of Appeals, First Circuit. November 11, 1922.)

No. 1569.

1. Carriers ⬡83—Carrier held liable for conversion on delivery of goods without production of bills of lading.

While there is a presumption from bills of lading made out to a consignee or assigns that he is owner of the goods, such presumption is rebuttable, and where it is shown that the shipper retained title and that the carrier knew of it, the carrier is liable for conversion for delivery to the consignee without production of the original bills of lading.

2. Carriers ⬡55—Bill of lading to consignee "or assigns" negotiable.

A bill of lading made out to a consignee "or assigns" is equivalent to one to the consignee or order, and is negotiable.

In Error to the District Court of the United States for the District of Porto Rico; Odlin, Judge.

Action at law by the McGowin Lumber & Export Company, Inc., against the New York and Porto Rico Steamship Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Ramon Siaca, Jr., of San Juan, P. R. (Soto Gras & Siaca, of San Juan, P. R., on the brief), for plaintiff in error.

Thomas M. Stevens, of Mobile, Ala. (Stevens, McCorvey, McLeod & Goode, of Mobile, Ala., on the brief), for defendant in error.

Before BINGHAM, JOHNSON and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is an action brought by a shipper against a carrier for misdelivery and conversion of five shipments of

lumber or boxes consigned to one Strayer or assigns under circumstances alleged to show that the shipper retained title in the goods, that the carrier had notice of the retention of title by the shipper, and that the goods were not to be delivered to the consignee without the production of the original bills of lading. There was a trial by jury in the United States District Court for Porto Rico, and a verdict was rendered and judgment entered for the plaintiff for $3,294.60, with interest from the 14th day of November, 1916, and the defendant prosecuted this writ of error.

To maintain the action the plaintiff, the shipper, was required to prove (1) that it was the owner of the goods at the time of the alleged misdelivery; and (2) that the defendant had notice of facts from which it knew that the plaintiff retained ownership in the goods, and that Strayer was not to receive them unless he produced the original bills of lading.

[1] The bills of lading having been made out to Strayer or assigns as consignee, he was presumptively the owner of the goods, and, in the absence of notice to the contrary, a delivery to him would discharge the carrier. This presumption, however, was rebuttable, and if it was made to appear that the shipper reserved title, and that the carrier knew of it, the carrier could not safely make delivery to the consignee without the production of the original bill of lading (Sweet v. Barney, 23 N. Y. 335; Price v. Powell, 3 N. Y. 322; Merchants' Exchange Bank v. McGraw, 76 Fed. 930, 937; Moore on Carriers [2d Ed.] p. 219, § 10; 6 Cyc. pp. 468–470; 35 Cyc. pp. 332–334), for it is well settled that delivery of property by a carrier to an unauthorized person is of itself a conversion which renders the carrier liable in an action of tort in the nature of trover, without regard to the question of his due care or negligence. Forbes v. Boston & Lowell R. R., 133 Mass. 154, 156, 157; 1 Moore on Carriers, pp. 233–236.

In this case there was evidence from which it appeared that for several months prior to the shipments in question the plaintiff had been shipping lumber by the defendant's steamship line from New Orleans to Porto Rico, consigned, as in the case of these shipments, to Strayer or assigns; that from the course of dealing that took place the defendant knew that the plaintiff reserved title to the goods; that on each shipment the original bill of lading with a sight draft on Strayer for the freight and a time draft for the purchase price of the lumber were forwarded by the plaintiff through the defendant to the Bank of Nova Scotia at San Juan, Porto Rico, which, upon payment of the sight draft and payment or acceptance of the time draft by Strayer, turned over the original bill of lading to him; that in no case, so far as the evidence showed, had the defendant ever delivered any of the shipments to Strayer without the production of the original bills of lading down to the time of the five shipments in question; and that in four of these five shipments, before delivery to Strayer, it required from him indemnity bonds in which he stated that his failure to produce the original bills of lading was because they were lost or delayed in transit. But, apart from the evidence showing the prior course of business tending to prove the defendant's understanding that the goods were to

be delivered to Strayer only upon the production of an original bill of lading, the evidence as to these five shipments also showed that the defendant participated to such an extent in the handling of the drafts and the original bills of lading and in forwarding them to the Bank of Nova Scotia that it was charged with notice that title was reserved by the plaintiff, and that Strayer was to be entitled to receive the goods only on production of the original bills of lading.

There are seven assignments of error, but the record discloses that the questions raised only by the second, third, and fifth were duly preserved by exceptions taken at the trial.

[2] By the second assignment of error the defendant complains that the court erred in instructing the jury as follows:

"I charge you as a matter of law that the bills of lading involved in this case, and upon which the shipments referred to in the evidence were made, are negotiable order bills of lading."

The defendant has failed to point out, and we are unable to see, wherein this instruction was erroneous. The original bills of lading were made out to Strayer or assigns, and were as negotiable as they would have been, had they been made out to Strayer or order. 6 Cyc. p. 424. Although it is unimportant in this case whether the bills of lading were negotiable or otherwise, nevertheless, as the instruction was correct, we fail to see wherein the defendant was or could have been harmed.

The court also instructed the jury as follows:

"The paper which is handed to the court by the jury is marked 'Plaintiff's Exhibit E,' and the court rules that this is not an original bill of lading, that it is a nonnegotiable copy, and that no delivery would be authorized upon that in my opinion."

This is the matter complained of in the fifth assignment of error. Plaintiff's Exhibit E is a carbon copy of an original bill of lading issued by the defendant for one of the shipments in question, and upon which the defendant sought to justify delivery of that shipment to Strayer. The original bills of lading were stamped "Original" in large letters and in a different colored ink from that in which the body of the bills of lading were typewritten. On the other hand, Exhibit E bore no such stamp, and the body of the instrument plainly disclosed that it was a carbon copy. The evidence also showed that this carbon copy was forwarded to the consignee for the purpose of notifying him of the arrival of the shipment and for nothing else. It surely was not an original bill of lading, and would not authorize a delivery to the consignee.

The third assignment of error has not been alluded to by the defendant, either in brief or argument, and we regard it as not relied upon and waived.

The judgment of the District Court is affirmed, with costs to the defendant in error.