### CONKLIN et al. v. NEWTON.

District Court, E. D. New York. June 21, 1928.

No. 2672.

Robert B. Honeyman, of New York City, for plaintiffs.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Mr. Smith and Mr. McArthur, of counsel), for defendant.

MOSCOWITZ, District Judge. This action is brought to recover from the collector as an individual the sum of $32,807.22, the invoice value of certain pimentos, with interest thereon from March 26, 1919.

On February 1, 1919, the firm of Roman y Mascarell, of Gandia, Spain, shipped on the steamship Armuru 10,950 cases of preserved peppers to their own order at New York, receiving from the steamship a bill of lading signed by the master of the ship showing shipment to the order of the shippers, Roman y Mascarell.

Roman, of the firm of Roman y Mascarell, indorsed the bill of lading "to the order of the National Park Bank." The bill of lading was attached with a sight draft and delivered to the Valencia Bank, the agent of the National Park Bank of New York City.

After the merchandise was shipped, there were negotiations between the shippers and the corporation J. Menist & Co., Inc., which resulted in a contract of sale of the goods already shipped on board the steamship Armuru. There was some difficulty in opening of a letter of credit pursuant to the contract, and Roman y Mascarell forwarded the sight draft and bill of lading attached to the National Park Bank in New York City, reserving the property in themselves until the payment of the purchase price.

The vessel arrived in New York on March 24th. On March 25th, J. Menist & Co. made application to the collector of customs for an entry of the merchandise, and, not having the bill of lading, furnished a bond to produce it. From time to time, Menist & Co. received permits allowing them to withdraw such merchandise as they wished.

In due course, the bill of lading with the sight draft attached reached the National Park Bank and was tendered to J. Menist & Co. Menist & Co. never paid the draft, and never had possession of the bill of lading, nor did they pay any part of the purchase price.

Menist & Co. obtained possession of the entire shipment of pimentos. Later Menist & Co. went into bankruptcy. The National Park Bank secured a delivery of a part of the merchandise, 7,524 cases; the balance, 3,426 cases, Menist & Co. having previously sold. The bank did not receive any part of the proceeds of the sale of the 3,426 cases; and plaintiffs now seek a recovery for the value of the 3,426 cases which Menist & Co. disposed of after their release from customs custody.

Defendant contends that he cannot be held liable for the acts of his deputies, citing Robertson v. Sichel, 127 U. S. 507, 8 S. Ct. 1286, 1290, 32 L. Ed. 203. This was a suit brought to recover from the collector for the loss of the contents of a trunk belonging to the plaintiff, who was an arriving passenger. It appeared that the trunk was allowed to remain on the pier overnight, and it was destroyed by fire. The opinion of the Su-

preme Court, reversing a judgment for the plaintiff, contained the following language.

"We are of opinion that there was error in the charge of the court, and that the defendant was not liable for the wrong, if any, committed by his subordinates, on the facts of this case. There is nothing in the evidence to connect the defendant personally with any such wrong."

It seems clear that Robertson v. Sichel, supra, can be distinguished from the instant case. The collector did not put the trunk on the dock, his agent did not cause the fire, and the negligence, if any, was caused by the leaving of the trunk on the dock overnight. There was no evidence adduced that the collector authorized that act either directly or indirectly.

The Underwood Tariff Act of October 3, 1913, c. 16, § 3B, 38 Statutes at Large 181, provides: "All merchandise imported into the United States shall, for the purpose of this Act, be deemed and held to be the property of the person to whom the same is consigned; and the holder of a bill of lading duly indorsed by the consignee therein named, or, if consigned to order, by the consignor, shall be deemed the consignee thereof; and in case of the abandonment of any merchandise to the underwriters the latter may be recognized as the consignee."

The Regulations of the Treasury Department, art. 219, provides: "The collector may in his discretion permit entry to be made without the bill of lading or express receipt, on a bond being filed conditioned for the subsequent production of such bill of lading and to indemnify the collector against any loss or damage which may be sustained by reason of permitting such entry to be made."

The entry which Menist & Co. made was imperfect for want of the bill of lading and invoice, and thereupon the collector was obliged to take the goods into his custody. Menist & Co. thereupon availed themselves of the discretionary power of the collector, and made the entry without producing the bill of lading by filing a bond for its subsequent production. The practice in this respect was fully testified to by the deputy collectors.

The case of Derobert v. Stranahan, 126 F. 581, 583, in the United States Circuit Court for the Second Circuit, involved facts of a similar nature to the case at bar. In that case the consignee named in the bill of lading made entry of certain merchandise without production of the bill of lading, and thereafter the plaintiffs in that action presented the bill of lading and demanded the delivery of the goods, and, upon failure to receive them, brought suit against the collector for their value. The court, directing a verdict for the defendant, said:

"On the 16th of December, when the combs arrived in New York, they were claimed by Chazel & Co., who made the 'declaration of owner in cases where merchandise has been actually purchased,' as provided by section 5 of said act. They also made 'application, under oath, to enter goods without invoice' upon the ground that no certified invoice had been received. In all this they were confirmed by the ship's manifest. In permitting the consignees to take the goods, after paying the duty thereon, I cannot think that the collector was guilty of any breach of duty or illegal act which renders him liable for their value. Upon the facts presented to him Chazel & Co. were not only the consignees, but the owners of the goods and no hint of adverse interests was even suggested."

In the case at bar, the original manifest of the steamship company shows a consignment to order, the bill of lading shows a shipment to order, and the bond itself is stamped with the statement that on the manifest the merchandise is consigned to order of the shipper. It is clear that the collector had knowledge of the adverse interests.

In a very recent case, Schall v. Newton, 217 App. Div. 171, 216 N. Y. S. 285, 286, there was presented the same question that is now before this court. The complaint was dismissed upon the trial, but the Appellate Division unanimously reversed the trial court and directed judgment for the plaintiff. The judgment was affirmed without opinion by the Court of Appeals in 245 N. Y. 576, 157 N. E. 864.

Counsel for the defendant has attempted to distinguish Schall v. Newton, supra, with the instant case. The argument set forth is that it was tried upon stipulated facts. The case upon appeal referred to by defendant and submitted herewith shows that it was stipulated that:

"The merchandise arrived at the port of New York and came into the possession of the defendant, Byron R. Newton, in his official capacity as such collector, and was discharged from said steamship and entered at the United States Custom House of said port under the Custom House entry No. 41061 by Bordeaux and New York Trading Co. without production of said bills of lading, or any of them, and the defendant, Byron R. Newton, thereafter and on or about the 28th day of February, 1920, released from cus-

toms custody the merchandise, without the production of said bills of lading, or any of them, and thereupon some person or persons other than the plaintiffs or any of them secured possession of said merchandise and retained same." Stipulation, p. 55.

"Said articles were entered at the Custom House at said port and released from customs' custody by the defendant, Byron R. Newton, as aforesaid, without the knowledge, authority or consent of the plaintiffs, or any authorized representative of them."

There is no distinction between the facts as established in the instant case and those stipulated in Schall v. Newton, supra. Here, the merchandise came into possession of the collector under the statutes providing that he shall take them into custody. The merchandise was entered by Menist & Co. without production of the bill of lading, and thereafter the merchandise was released from customs custody and Menist & Co. secured possession. The fact that the surety company was a party defendant in the Schall Case is immaterial, because the court in its unanimous opinion held in part:

"We think that the bond is liable in the first instance to the rightful owners of the goods, and that the plaintiffs rightfully sued both the collector and the bonding company, they being jointly and severally liable in law."

· With the conclusions reached by the state courts, I am in full accord. Judgment for the plaintiffs. Settle decree on notice.