LAFONTAN v. ELTING, Collector of the Port of New York, et al.

District Court, S. D. New York.
Dec. 15, 1931.

Verdict directed for plaintiff.

Guerra Everett, of Washington, D. C., for plaintiff.

George Z. Medalie, U. S. Atty., of New York City, for defendant Elting.

William J. McArthur, of New York City, for defendants American Import & Export Co., and United States Fidelity & Guaranty Co.

COXE, District Judge.

This is a suit at law against the collector of customs for $3,810 for the value of 18 bales of lambskins imported from France in October, 1923, and alleged to have been misdelivered without the production of the bill of lading. The plaintiff is the assignee of J. B. Arbouet, the importer and shipper of the merchandise. Originally, the suit was brought against the collector, as sole defendant, but on motion of the collector the court directed that American Import & Export Corporation, the consignee and principal on the indemnity bond to produce the bill of lading, and United States Fidelity & Guaranty Company, the surety, be made additional defendants, and that a supplemental summons issue to them. This was done, and all three defendants have appeared and answered, denying liability to the plaintiff. The issue, therefore, as finally tendered by the pleadings, is on the indemnity bond for damages alleged to have been sustained as a result of the misdelivery of the merchandise without the production of the bill of lading.

In the complaint it is alleged that the merchandise had a value of $3,810. This is admitted by the defendants American Import & Export Corporation and United States Fidelity & Guaranty Company, in their joint answer; but the collector denies any knowledge or information sufficient to form a belief with respect to the allegation.

The merchandise was shipped by the S. S. Zeeland of the White Star Line under a straight bill of lading made out to "American Import & Export Corp., 640 Broadway, New York, or * * * assigns," which bill of lading was delivered to J. B. Arbouet, the shipper. Arbouet thereupon transmitted to American Import & Export Corporation, the consignee, an invoice for the merchandise amounting to $3,810, which, it is asserted by the plaintiff, contained a notation at the foot that 90 per cent. was to be paid on delivery of the bill of lading. This invoice as presented to the collector bears no such notation, but it shows a large ink blot in the place where the notation is claimed to have been.

The bill of lading was not forwarded by Arbouet, the shipper, to the consignee, but was retained by him, and has been produced in court at the trial by the plaintiff unindorsed. There was proof, also, that the invoice had not been paid by the consignee, and, although this proof is not entirely satisfactory, it is, I think, sufficient to establish the fact in the absence of contradictory evidence by the defendants.

The American Import & Export Corporation, the consignee, on arrival of the invoice, went to the collector, presented the invoice, and, after execution of the necessary documents, entered and obtained possession of the merchandise, on filing an indemnity bond to produce the bill of lading in the penal sum of $5,800, with the defendant United States Fidelity & Guaranty Company as surety. This bond is dated October 29, 1923, and is conditioned to "defend, save and hold harmless the said Collector of Customs against all and every claim and demand which may arise or be brought against him by any person or persons, firm, corporation or association, by reason of the delivery of the goods described above to or for the account of said Principal, and will produce and deliver to the said Collector of Customs a valid bill of lading for the said goods, properly endorsed by the shipper or consignee, as the case may be, within thirty days from the date hereof. * * *"

It was stipulated that the case might be tried before a jury of one; and at the close of the evidence all parties moved for a direction of a verdict.

It is provided in section 483 of the Tariff Act of 1922 (title 19, U. S. C., § 344 [19 US CA § 344]) that "all merchandise imported into the United States shall, for the purposes of this title, be held to be the property of the person to whom the same is consigned."

This, in substance, has been the law since 1799, and the object of the provision "was to prevent frauds upon the government arising from collusive transfers." U. S. v. Fawcett (C. C.) 86 F. 900, 901; U. S. v. Bishop (C. C. A.) 125 F. 181. Furthermore, it was held in Derobert v. Stranahan (C. C.) 126 F. 581, in applying this provision of the statute, that delivery of imported merchandise to the consignee without production of the bill of lading was not misdelivery for which the collector could be held liable in damages. Thereafter, article 219 of the Cus-

toms Regulations of 1915 was promulgated, providing that the collector might in his discretion permit entry to be made without the production of the bill of lading "on a bond being filed conditioned for the subsequent production of such bill of lading and to indemnify the collector against any loss or damage which may be sustained by reason of permitting such entry to be made."

In suits on indemnity bonds under this article, recoveries have been consistently allowed where the bill of lading was an order bill, and delivery was made without the production of the bill of lading. Conklin v. Newton (D. C.) 35 F.(2d) 541, affirmed (C. C. A.) 34 F.(2d) 612; Giles v. Newton (D. C.) 21 F.(2d) 484; Schall v. Newton, 217 App. Div. 171, 216 N. Y. S. 285, affirmed 245 N. Y. 576, 157 N. E. 864.

This provision of the Customs Regulations was, with some changes, written into the Tariff Act of 1922, § 484 (e), title 19, U. S. C., § 347 (19 USCA § 347), as follows:

"The consignee shall produce the bill of lading at the time of making entry, except that * * *

"(2) The collector is authorized to permit entry and to release merchandise from customs custody without the production of the bill of lading if the person making such entry gives a bond satisfactory to the collector, in a sum equal to not less than one and one-half times the invoice value of the merchandise, to produce such bill of lading, to relieve the collector of all liability, to indemnify the collector against loss, to defend every action brought upon a claim for loss or damage, by reason of such release from customs custody or a failure to produce such bill of lading and to entitle any person injured by reason of such release from customs custody to sue on such bond in his own name, without making the collector a party thereto. Any person so injured by such release may sue on such bond to recover any damages so sustained by him."

The present bond, although not following strictly the language of the statute, covers all liability of the collector "by reason of the delivery of the goods described above to or for the account of said Principal," i. e., the American Import & Export Corporation; and the section specifically authorizes any person injured by reason of the release of merchandise without the production of the bill of lading to "sue on such bond to recover any damages so sustained by him."

This statute has, I think, very materially changed the law as laid down in the Derobert Case, supra, and I can see no reason why a recovery should not be allowed on the bond if damage was sustained by reason of the failure to produce the bill of lading.

It is urged, however, by the defendants that the bill in the present case was a straight bill made out to American Import & Export Corporation "or * * * assigns," and that delivery could therefore properly be made to the named consignee without the production of the bill. That, undoubtedly, is the law in this country with respect to railroad carriers, and under the Uniform Bills of Lading Acts (Williston on Sales [2d Ed.] vol. 1, § 285); but it is otherwise in England with respect to water carriers (The Stettin, 14 Prob. Div. 142; Russell v. Miskin, Kings Bench, 1927; 27 Lloyds List, L. R. 324); and there may be special circumstances making delivery in any event improper without the production of the bill (N. Y. & P. R. S. S. Co. v. McGowin [C. C. A.] 284 F. 513).

In the present case, delivery under the federal statute could not legally be made without the production of the bill of lading, unless the bond was given. No differentiation is made in that respect between straight and order bills, and I do not think that Congress meant to limit relief on the indemnity bond to cases of order bills, or where delivery is made to some one other than the consignee in a straight bill. Rather is it to be supposed that Congress intended to give the fullest protection to those injured by failure to observe the statutory provision requiring production of the bill before receiving the merchandise; and I think this is what the language of the statute plainly means.

The defendants argue, however, that the bill of lading now stands in the name of the defendant, American Import & Export Corporation, and is unindorsed, and that therefore the plaintiff has no title to the merchandise; but, clearly, the mere placing of the consignee's name in the body of the bill of lading had no particular significance as long as the document was undelivered; and I think it was open to the shipper thereafter to show that title had not in fact passed to the consignee. Russell v. Miskin, supra.

On the question of the alleged alteration of the invoice, I do not think that satisfactory evidence has been offered to sustain the point, and I am clear that there was nothing on the face of the paper itself as presented

to the collector to put the collector on notice of any infirmities in the title.

I therefore hold that the plaintiff is entitled to recover on the bond, and direct a verdict in her favor for $3,810, the value of the merchandise, with interest and costs.