## ERSKINE v. UNITED STATES.*
### No. 7977.

Circuit Court of Appeals, Ninth Circuit.
June 30, 1936.

*For opinion on rehearing, see 84 F.(2d) 880.

WILBUR, Circuit Judge, dissenting.

———◆———

Keyes & Erskine, Herbert W. Erskine, and Morse Erskine, all of San Francisco, Cal., for appellant.

H. H. McPike, U. S. Atty., and Robert L. McWilliams and S. P. Murman, Asst. U. S. Attys., all of San Francisco, Cal.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

DENMAN, Circuit Judge.

This appeal is from a judgment awarding recovery against appellant for additional or increased duties on certain calculating machines imported from Bremen. The liability is based on a document held by the District Court to be an agreement of appellant given under the Tariff Act of September 21, 1922, c. 356, title 4, § 485 (d), 19 U.S.C.A. § 355.

Appellee admits that if the document in question does not comply with the requirements of the statute, the customs brokers making the entry as consignees and not the appellant are liable for the additional duties. Appellant contends that if it complies with the statute it binds another person, the W. W. Erskine, Inc., and not himself.

That section of the customs law in question reads as follows: "§ 355. *Same; when consignee not liable for additional or increased duties*. A consignee shall not be liable for any additional or increased duties if (1) he declares at the time of entry that he is not the actual owner of the merchandise, (2) he furnishes the name and address of such owner, and (3) within ninety days from the date of entry he produces a declaration of such owner conditioned that he will pay all additional and increased duties, under such regulations as the Secretary of the Treasury may prescribe. Such owner shall possess all the rights of a consignee. (Sept. 21, 1922, c. 356, Title IV, § 485 (d), 42 Stat. 961.)"

Such revenue acts must be construed strictly in favor of the appellant sought to be charged as importer. He is "entitled to the benefit of even a doubt." Tariff Act 1897, 30 Stat. 151; United States v. Riggs, 203 U.S. 136, 139, 27 S.Ct. 39, 40, 51 L.Ed. 127; Hartranft v. Wiegmann, 121 U.S. 609, 616, 7 S.Ct. 1240, 30 L.Ed. 1012; Miller v. Standard Nut Margarine Co., 284 U. S. 498, 508, 52 S.Ct. 260, 76 L.Ed. 422.

Pursuant to the statute (1) the brokers entering the merchandise as consignees declared at the time of the entry that they were not the actual owners of the machines and (2) furnished the appellee the name and address of "such" actual owner, W. W. Erskine, Inc., shown to be a California corporation.

It is concerning the requirement (3) of the statute that the controversy here arises. Instead of the brokers producing a declaration of "such owner [i. e. W. W. Erskine, Inc., the corporation] conditioned that he will pay all additional and increased duties," they produced a declaration signed by W. W. Erskine, an individual. W. W. Erskine was in fact president of the corporation, but appellee claims he did not sign in that capacity,

and argues that he therefore made himself liable.

After appellee received this declaration, appellee's agents, the customs authorities, assessed the increased duties against the corporation, and not against appellant. W. W. Erskine, Inc., in its corporate capacity, petitioned for remission to the United States Customs Court. In its decision W. W. Erskine, the individual, was found by the court to be the "proprietor" of the petitioning corporation. The Assistant Attorney General, representing the appellee, did not contend the corporation was not the owner, but succeeded in defeating the corporation's petition for remission and established that the petitioning corporation was liable for the additional duties appellee had assessed against it.

In the passing years from the importation in 1924, the depression had ensued. The corporation had ceased to function, its books were lost, and its business gone. Appellee did not press its claim against the corporation against which it assessed the duties, and, in 1930, filed suit against the appellant on the declaration given by him to the appellee.

Though the document does not comply with the third condition of the statute, in that it is not signed by the ("such") corporate owner under the requirement of the second condition, appellee contends it is in such form that it frees the brokers, does not bind the corporation, W. W. Erskine, Inc., and does bind W. W. Erskine as an individual.

Appellee claims that appellant owes the duties assessed against the corporation because he is its alter ego. The burden of proof on such an issue is upon appellee. The facts are that the stock of the corporation consisted of 35,000 shares of preferred outstanding, but 18,000 of which were owned by appellant. Appellant owned all the common. Appellee offered no proof of the capitalization, so it may well be that the entire capital value was absorbed by the preferred. The fact that in a proceeding in the Customs Court concerning the corporation's liability, the court found him, its president, to be its "proprietor," and that as such proprietor he described in the first person what he did with regard to the corporation, is not proof that he is the corporation's alter ego, against the evidence of its stock ownership. There is no merit in appellee's contention.

We therefore hold that if appellee's contention that the declaration concerns only the appellant is correct, the consignee brokers are liable. This is because they failed to comply with requirement (3) of section 485 (d) to produce a declaration and agreement to pay the duties made by "such" corporate owner named pursuant to requirement (2) of the statute.

Following appellee's premise to its conclusion, since the brokers remain liable for the duties, there is no consideration for the unilateral agreement of the appellant. No consideration is expressed on its face; none is shown to have been given by the appellee promisee. The consideration contemplated by the statute is the detriment to the promisee, in releasing the claim against the brokers. This is so obvious that it overcomes the presumption, if any, in California, that consideration was given, arising from the fact that the promise was in writing. Since the brokers were not released, there is no detriment and no consideration.

The appellee maintains that the defense of lack of consideration is not within the issues of the case, because not pleaded.

Under the law, it was not necessary to plead this defense.

The complaint is the common form of complaint in indebitatus assumpsit, a common count. The answer is a general denial.

The rule is stated in 13 C.J. 740, 741, as follows: "As a rule, if plaintiff declares specially on an express contract, a want of consideration cannot be proved under the general issue or the general denial. But if he declares on the common counts instead of declaring specially, defendant may show either a want or a total failure of consideration under the general issue; and this on the principle that the plea of non assumpsit puts plaintiff on proof of his whole case and entitles defendant, without prior special notice, to give evidence of anything which shows ex aequo et bona that plaintiff ought not to recover."

See, also, Craig v. State of Missouri, 4 Pet. 410, 426, 7 L.Ed. 903; McCrea v. Parsons (C.C.A.7) 112 F. 917, 919; Wetmore v. San Francisco, 44 Cal. 294, 300; Meredith v. Santa Clara Mining Association, 56 Cal. 178, 183; Heaton-Hobson As-

sociated Law Offices v. Arper, 145 Cal. 282, 284, 78 P. 721.

In the last case cited, an action in indebitatus assumpsit, the court said (145 Cal. 282, 284, 78 P. 721, 722): "The answer was sufficient to present an issue in the case. As said in Young v. Rummell, 2 Hill [N.Y.] 478, 38 Am.Dec. 594, quoted with approval by this court in Meredith v. Santa Clara Min. Ass'n, 56 Cal. [178] 183: 'Although, in point of form, the plea of non assumpsit puts nothing in issue but the making of the promise, it has been long settled that nearly every defense is admissible under that plea which shows that there was not a subsisting cause of action at the time the suit was brought.'"

■ Appellant's position is that he signed the document, not as an individual, but in his capacity as president of the corporation, intending to bind it. Considering the case from this angle, since the document is on a printed form furnished by the appellee through its Treasury official, any ambiguity must be resolved against the appellee drafting it. Commissioner of Internal Revenue v. Leasing & Building Co. (C.C.A.6) 46 F.(2d) 2, 4.

■ The printed form reads: "I, the undersigned, representing ———— address ———— *in the capacity indicated hereon,* declare that *they* are the owners of the merchandise covered by the entry described below, and that *they* will pay all additional and increased duties pursuant to Section 485, paragraph D, of the Tariff Act of 1922, and that such entry exhibits a full and complete account of all the merchandise imported by them in the vessel indicated and obtained by them in pursuance of a purchase, or an agreement to purchase, except." (Italics supplied.)

The form for determining the "capacity" in which it is signed consists of a line for the signer ending in a vertical arrangement of three squares. The top square has next it the word "principal," the next beneath the words "member of the firm," and the lower the words "———— of the corporation."

(Title)

Appellant signed on the signature line, but did not check or otherwise mark any of the squares. A flourish from his signature beginning in the letter "k" and extending well to its left and returning crossing it to the right for a like distance, ex-

tends through the upper square. In appellee's brief below it suggested that it was intended to indicate a designation of the signer as principal. However, the contention cannot be made here since the appellee's attorney withdrew the suggestion in the following language: "The government never has contended that defendant W. W. Erskine 'checked' any of the three squares appearing opposite his signature on the owner's declaration."

A statement that "I" singular "representing ———— address ———— * * * *declare* that *they* [not "I" or "we"] are [plural] the owners of the * * * entry described below, and that *they* [not "I" or "we"] will pay all additional and increased duties pursuant to Section 485, paragraph D [under which the corporation and not the signer was designated] * * * and that such entry exhibits a full and complete account of all the merchandise imported by them [not "I," the signer]," etc., seems a declaration that "they" and not "I," the signer, will pay the duties. The best that can be said for appellee's contention is that the printed form furnished by it is ambiguous as to the person liable, at least until one of the squares opposite the signature is checked. It is elementary that such ambiguity in a written instrument, even if not created by the draftsman obligee, may be resolved by parol evidence.

Appellant's testimony to the effect that he signed the declaration as agent for the corporation fully resolves the ambiguity. It is that the machines were purchased by the corporation and paid for by it. The corporation, and not himself, paid the first estimated duties on the merchandise through its customs brokers. Appellant as an individual had no interest in the merchandise. He made the declaration in the body of the instrument that it was for some one else, but through inadvertence neglected to check opposite his signature that it was for the corporation.

This is all the evidence on the subject. It is not contradicted by recitals in the decision of the United States Customs Court in the proceeding between the corporation and the appellee finding that he was the "proprietor" of the corporation of which he was president and that in his testimony of his actions as proprietor he used the first person in describing what was done as to the entry and assessment. Such findings, even if adverse to his pres-

ent contention, which they were not, would not be binding upon him, since he was not a party to the proceeding in the Customs Court for the remission of the additional duties.

We therefore hold that if appellant's declaration had been an agreement purporting to bind him, the decision below is erroneous, because there is no consideration for the agreement, and, that if it is not an agreement by the appellant, it must be construed as binding on the corporation and not appellant. Since neither brokers nor corporation are parties here, our decision need go no further.

Reversed.

WILBUR, Circuit Judge (dissenting).

I dissent. This is a suit at law against W. W. Erskine for duties upon certain calculating machines which were imported from Bremen. They were consigned to Lunham & Moore, importation brokers, who were, for the purposes of the Tariff Act, deemed to be the owners thereof. 19 U.S.C.A. § 344. This provision of the law, making the consignee the owner for the purposes of the Tariff Act, has been in effect since 1799. Lafontan v. Elting, Collector (D.C.) 54 F.(2d) 664; see, also, Meredith v. United States, 13 Pet. 486, 493, 10 L.Ed. 258. Tariff duties constitute a lien upon the imported goods, and the importer is personally liable therefor. Meredith v. United States, supra. The consignee can shift liability to the owner by filing the declaration required by the statute (19 U.S.C.A. § 355) and producing within 90 days a declaration from the owner that he will pay the duties. The consignee made such a declaration showing that W. W. Erskine, Inc., was the owner, and within 90 days produced a declaration signed by W. W. Erskine stating in effect that he was the owner of the goods and would pay the duty thereon.

Testimony was introduced tending to show that W. W. Erskine was not the owner of the goods, and that he signed the declaration individually by mistake; that he intended to sign the name of the corporation, "W. W. Erskine, Inc." At the close of the evidence the appellant made a motion for judgment, thus challenging the sufficiency of the evidence to support a judgment in favor of the government. This motion was denied and the appellant assigns as error the ruling thereon. Our review of the case is confined to a consideration of this ruling. I think it must be conceded that the evidence is sufficient to support a judgment holding that W. W. Erskine was the actual owner of the imported machines. The declaration by Erskine as to his ownership and willingness to pay the additional duties, if any, is sufficient to sustain a judgment based upon his ownership. There was contradictory evidence to the effect that the actual ownership of the property was in the corporation named "W. W. Erskine, Inc." But the trial court to whom the case was submitted by written stipulation without a jury was not required to believe this evidence as against the statement of the appellant. So far as this court is concerned, we have a simple condition of conflicting evidence as to which the decision of the trial judge is conclusive. It is true that the declaration signed "W. W. Erskine" is in printed form and uses plural pronouns, but I think this is without significance where the document is signed by an individual. If this view of the situation is correct the legal question involved is whether or not the owner of imported goods who has signed an agreement to pay the duty, is liable for those duties. Notwithstanding the fact that the brokers who were the consignees have failed to comply with the statutory requirements for shifting the liability from themselves to the owner in that in their declaration under 19 U.S. C.A. § 355, they named the corporation, W. W. Erskine, Inc., as the owner, whereas the real owner was W. W. Erskine. If the liability of the real owner who formally declares his ownership and agrees to pay the tax is dependent upon the exculpation of the consignees, then it is clear that the owner is not liable because of his declaration of ownership and intention to pay the tax. I see no reason, however, for concluding that the obligation of the real owner is dependent upon the exculpation of his brokers who are consignees. The duty is imposed upon the goods themselves and is a lien thereon. It is thus in legal effect a charge upon the owner of the goods, regardless of who the owner may be, to the extent of the value of the goods.

Justice Story, speaking for the court in Meredith v. United States, supra, made

the following statement in that regard: "Now, in the exposition of statutes laying duties, it has been a common rule of interpretation, derived from the principles of the common law, that where the duty is charged on the goods, the meaning is, that it is a personal charge on the owner, by reason of the goods. So it was held in Attorney General v. —————, 2 Anstr. 558, where a duty was laid on mash in a still; and it was said by the court, that where duties are charged on any articles, in a revenue act, the word 'charged' means, that the owner shall be debited with the sum; and that this rule prevailed even when the article was actually lost or destroyed, before it became available to the owner. Nor is there anything new in this doctrine; for it has long been held, that in all such cases, an action of debt lies in favor of the government, against the importer, for the duties, whenever, by accident, mistake or fraud, no duties, or short duties, have been paid."

The provision of the statute declaring the consignee to be the owner for the purpose of the act is to prevent fraud upon the government. Lafontan v. Elting (D.C.) 54 F.(2d) 664, supra; United States v. Fawcett (C.C.) 86 F. 900.

The same statute which makes the consignee the owner for the purpose of the act specifically provides for a method by which the real owner may charge himself with the payment of the duties, that is, by filing a declaration of ownership and agreement to pay the tax. If the real owner does this it would seem to be wholly immaterial as to whether or not the broker, who is consignee, is relieved from obligation to pay the tax because of this declaration. The basic obligation to pay duty is upon the owner of the imported goods, whether we look at the proposition from the standpoint of the lien on the goods or from the basic obligation to pay. The obligation is placed upon the consignee, who may merely be his agent as a matter of convenience to the government. As the Supreme Court said in Meredith v. United States, supra: "We have no doubt, that these bonds, being voluntary bonds, are valid; and that Hollins and his sureties are estopped to deny their validity." By parity of reasoning it would seem to follow that if we view the declaration of the owner in the case at bar as voluntary in that it was inef-

fective for the purpose intended, namely, of exculpating the brokers, it would still constitute a valid written agreement to pay the duties.

The judgment should be affirmed.